767 N.W.2d 68 (2009)
277 Neb. 1015
COMMUNITY DEVELOPMENT AGENCY OF THE CITY OF McCOOK, successor in interest to Community Development Authority of the City of McCook, Nebraska, appellant,
v.
PRP HOLDINGS, L.L.C., a Nebraska limited liability company, appellee.
No. S-08-983.
Supreme Court of Nebraska.
June 26, 2009.
*70 Michael L. Bacon and Steven P. Vinton, of Bacon & Vinton, L.L.C., Gothenburg, for appellant.
Trent R. Sidders and Austin L. McKillip, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., Lincoln, for appellee.
HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.

SUMMARY
In 1998, the Community Development Agency of the City of McCook, Nebraska (the Agency), contracted with four redevelopers to eliminate blight through a redevelopment project. The contract required the redevelopers to convert a building that housed a YMCA facility into apartments.
As part of the contract, the Agency agreed to implement tax increment financing (TIF). TIF is a financial incentive local governments can give developers to help pay the costs of redeveloping blighted areas.[1] When a blighted area is redeveloped, the property tax revenue from the area should increase. One way local governments can provide TIF funds is to freeze the property tax base in the project area before any redevelopment takes place.[2] Any future property taxes which exceed the frozen amount are collected and placed in a trust fund. These funds are then used to pay redevelopment costs. This is the type of plan used by the Agency for the project at issue; under the contract's terms, the TIF funds are paid to the redevelopers, who advanced the money for the redevelopment.
Here, the issue is whether the appellee, PRP Holdings, L.L.C. (PRP)which is a successor in interest to the redevelopers should have the TIF funds. The appellant, the Agency, contends that as a successor in interest to the redevelopment contract, PRP is not entitled to the TIF funds.
The district court determined that under Neb.Rev.Stat. § 18-2142.01(2) (Reissue 1997), PRP should have the TIF funds, and entered summary judgment for PRP. Under § 18-2142.01(2), the Agency had 30 days after the parties formally entered into the redevelopment contract in 1998 to contest its validity. The Agency filed this declaratory judgment in 2006. We agree that § 18-2142.01(2) forecloses the Agency's challenge. We affirm.

BACKGROUND
On September 11, 1998, the Community Redevelopment Authority of the City of McCook, Nebraska, predecessor of the Agency, entered into a redevelopment contract with the four above-mentioned redevelopers: Retro Development of Nebraska, Inc.; McCook YMCA Apartments I, Limited Partnership; Peter A. Spoto; and *71 Douglas E. Hiner. The community redevelopment authority agreed to provide TIF funds for converting the YMCA building into apartments. The contract imposed obligations on the redevelopers and burdens on the property, which obligations bound successors. The contract established the tax valuation at $700,000. It also provided that neither the property's owner nor the owner's successors could challenge the valuation. In exchange, the redevelopers would receive TIF funds for advancing the money to complete the agreed construction.
McCook YMCA Apartments I, Limited Partnership (hereinafter YMCA), not only was a redeveloper under the contract, but also owned the YMCA building. Its ownership was subject to a deed of trust held by its secured lender, First National Bank (the Bank) of Omaha. The Bank was both the trustee and the beneficiary of the deed of trust. In 2005, YMCA defaulted on the deed of trust. Through a trustee's sale, PRP purchased the YMCA building from the Bank.
Since entering into the contract, PRP or its predecessors have paid property taxes at the valuation established in the contract. Under the redevelopment contract, taxes attributable to the property's increase in value above its valuation before the redevelopment have been paid into a special fund held by the Agency. The Agency, however, has not paid the TIF funds to the redevelopers.
In August 2006, 8 years after signing the contract, the Agency filed this declaratory judgment action. It sought to have the redevelopment contract declared void ab initio because the contract and its implementation failed to comply with Nebraska's Community Development Law (CDL).[3] Alternatively, the Agency asked the court to decide which party should receive the TIF funds. As of February 1, 2008, the Red Willow County treasurer had collected $42,454.79 in real property ad valorem taxes. The taxes on the property have continued to accumulate, and the McCook treasurer is holding accumulated TIF funds for the Agency.
The district court concluded that § 18-2142.01(2) foreclosed the Agency from contesting the contract's validity. Under § 18-2142.01(2), a challenger has 30 days to contest the validity of a redevelopment contract that provides financing for an approved development project. The record shows the Agency waited 8 years before filing suit.
But because PRP was not a signatory to the contract, the court concluded, the only rights it could have to the TIF funds stemmed from interests it purchased at the trustee's sale. The court determined that under Neb.Rev.Stat. § 76-1010(2) (Cum.Supp.2008), PRP acquired all right, title, and interest of YMCA in the redevelopment contract through the trustee's sale. Thus, the court found PRP a successor in interest to YMCA's rights under the redevelopment contract.
The court concluded that because the redevelopment contract bound PRP to its restrictions, PRP should also have any benefits under the contract, including the TIF funds. The court granted PRP's motion for summary judgment and ordered the Red Willow County treasurer to pay the TIF funds to PRP under the terms of the contract. The Agency appeals.

ASSIGNMENTS OF ERROR
The Agency assigns, restated, that the district court erred in determining that *72 PRP is a successor in interest entitled to TIF funds under the redevelopment contract. Specifically, the Agency asserts that the court erred in the following rulings: (1) The trustee's sale did not terminate YMCA's interest in the TIF funds; (2) the TIF funds were real property interests subject to conveyance through a trustee's sale; (3) PRP should have the TIF funds although it was not a signatory to the redevelopment contract; (4) PRP should have all the funds promised to the redevelopers, not just a percentage; and (5) the contract was not void ab initio.

STANDARD OF REVIEW
[1-4] We will affirm a lower court's granting of summary judgment if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[4] In reviewing a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was granted and give such party the benefit of all reasonable inferences deducible from the evidence.[5] But the issue we are asked to decidewhether § 18-2142.01(2) appliespresents an issue of statutory interpretation, a question of law.[6] And when reviewing questions of law, we review the questions independently of the lower court's conclusions.[7]

ANALYSIS
[5] PRP argues that § 18-2142.01(2) forecloses all of the Agency's arguments because the Agency failed to contest the contract within 30 days. The statute provides in part:
In any suit, action, or proceeding involving the validity or enforceability of any agreement of a city, village, or authority brought after the lapse of thirty days after the agreement has been formally entered into, any such agreement reciting in substance that it has been entered into by the city, village, or authority to provide financing for an approved redevelopment project shall be conclusively deemed to have been entered into for such purpose and such project shall be conclusively deemed to have been planned, located, and carried out in accordance with the purposes and provisions of the [CDL] and sections 18-2145 to 18-2154.[8]
The Legislature has set a specific window of time during which a party can challenge a redevelopment contract. Under the statute, after the window has closed, the contract has conclusively complied with the CDL and Neb.Rev.Stat. §§ 18-2145 to 18-2154 (Reissue 1997). In short, § 18-2142.01(2) provides finality and gives all parties to a contract that provides financing for a redevelopment project a green light to proceed. The only exception is if a suit or other proceeding is initiated within 30 days of the parties' formally entering into the contract.
The Agency and redevelopers entered into the redevelopment contract on September 11, 1998. The Agency concedes that it did not challenge the contract's validity or enforceability within 30 days *73 after the contract was signed. The Agency filed for a declaratory judgment on August 3, 2006. Because the Agency failed to contest the contract's validity within 30 days of the parties signing the contract, § 18-2142.01(2) precludes the Agency from doing so now.
But the Agency argues, rather obliquely, that PRP cannot rely on § 18-2142.01(2) as a defense. It argues that only a party that has standing can rely on § 18-2142.01(2). It claims that PRP does not have standing because it has not been harmed. The Agency's argument wilts after a quick analysis.
[6] Standing "is the legal or equitable right, title, or interest in the subject matter of the controversy which entitles a party to invoke the jurisdiction of the court."[9] Obviously PRP has an interest in the TIF funds. But it is the Agency as the party that initiated this suit that must meet the standing requirementnot PRP, who is a defendant. The Agency invoked the district court's jurisdiction and sued PRP as a possible successor in interest to the original redevelopers. The Agency's standing argument fails. The district court did not err in holding that § 18-2142.01(2) precluded the Agency from contesting the contract's validity.
Because we conclude that the contract is valid, we next determine if PRP succeeded to YMCA's interest in the TIF funds through the trustee's sale. In the redevelopment contract, the Agency agreed to pay the four redevelopers part of the TIF funds. A "redeveloper" is "any person, partnership, or public or private corporation or agency which shall enter or propose to enter into a redevelopment contract."[10] The other three redevelopers the Agency contracted with have either failed to respond to this lawsuit or have disclaimed their interest in the TIF funds. PRP, as a possible successor in interest to YMCA, is the only potential redeveloper claiming an interest in the TIF funds.
In 2005, after YMCA defaulted on the deed of trust, its secured lender, the Bank, sold the redeveloped property to PRP at a trustee's sale. Although PRP is not a redeveloper under the CDL, it claims to have succeeded to YMCA's interest in the contract. But the Agency argues that YMCA's right to receive the TIF funds was terminated at the trustee's sale and was not conveyed to PRP. We understand the Agency's argument to be that because the redevelopment contract was recorded in 1999, the year after the Bank filed its deed of trust, the trustee's sale only terminated and did not convey YMCA's interest in the contract and TIF funds. In support of its position, the Agency cites § 76-1010(2), which provides that the sale of trust property operates to convey to the purchaser
the trustee's title and all right, title, interest, and claim of the trustor and his or her successors in interest ... in and to the property sold, including all such right, title, interest, and claim in and to such property acquired by the trustor or his or her successors in interest subsequent to the execution of the trust deed. All right, title, interest, and claim of the trustor and his or her successors in interest... including all such right, title, interest, and claim in and to such property acquired by the trustor or his or her successors in interest subsequent to the execution of the trust deed, shall be deemed to be terminated as of the time the trustee or the attorney for the *74 trustee accepts the highest bid at the time of the sale.

(Emphasis supplied.) The Agency argues that under the second sentence of § 76-1010(2), YMCA's interest in the TIF funds was terminated by the trustee's sale and not acquired by PRP. The Agency presents a sketchy argument at best. It can make this argument only by taking the quoted language out of context.
Under the first sentence of § 76-1010(2), the purchaser of trust property clearly acquires any interest the trustee has in the property. This includes any interest the trustor had in the property, whether acquired before or after the execution of the trust deed. The second sentence of the statute simply clarifies that the trustor and trustee retain no interest in the property after trustee's sale because their interest has been conveyed to the purchaser. As PRP suggests, the Agency's tortured interpretation of § 76-1010(2) would render it nonsensical and internally inconsistent. Under the Agency's interpretation, no trustor's interest could be conveyed to the purchaser.
At the trustee's sale, PRP acquired YMCA's rights, title, and interests in the redeveloped property. That interest included the obligations and benefits under the redevelopment contract. Under the terms of the contract, the original redevelopers agreed to redevelop the property, accept an artificially inflated tax valuation, and not sell the property to a tax-exempt entity. In return, the Agency agreed to pay the redevelopers the TIF funds. Thus, the redevelopment contract operates like a covenant.[11] We conclude that through the trustee's sale, PRP assumed YMCA's obligations under the redevelopment contract. Accordingly, it should receive any benefits payable under the contract. Because all other redevelopers have either disclaimed their interest in the TIF funds or have had default judgments entered against them, PRP is entitled to the TIF funds as successor in interest to YMCA. We have considered the Agency's other assignments of error and conclude they lack merit.
We conclude that § 18-2142.01(2) forecloses the Agency from contesting the redevelopment contract's validity. Because the contract is valid, PRP acquired YMCA's interest in the contract through the trustee's sale. All other redevelopers entitled to TIF funds under the contract have disclaimed or forfeited their interest in the funds. We conclude that the district court correctly determined that PRP, as YMCA's successor in interest, should have the TIF funds.
AFFIRMED.
WRIGHT, J., not participating.
NOTES
[1] Prime Realty Dev. v. City of Omaha, 258 Neb. 72, 602 N.W.2d 13 (1999). See, also, Todd A. Rogers, A Dubious Development: Tax Increment Financing and Economically Motivated Condemnation, 17 Rev. Litig. 145 (1998).
[2] See Neb.Rev.Stat. § 18-2147 (Reissue 1997).
[3] See Neb.Rev.Stat. §§ 18-2101 to 18-2144 (Reissue 1997). See, also, Neb.Rev.Stat. § 18-2153 (Reissue 1997).
[4] See, Jardine v. McVey, 276 Neb. 1023, 759 N.W.2d 690 (2009); Thone v. Regional West Med. Ctr., 275 Neb. 238, 745 N.W.2d 898 (2008).
[5] See id.
[6] See Lagemann v. Nebraska Methodist Hosp., 277 Neb. 335, 762 N.W.2d 51 (2009).
[7] See id.
[8] § 18-2142.01(2) (emphasis supplied).
[9] Adam v. City of Hastings, 267 Neb. 641, 646, 676 N.W.2d 710, 714 (2004).
[10] § 18-2103(14).
[11] See, generally, Skyline Woods Homeowners Assn. v. Broekemeier, 276 Neb. 792, 758 N.W.2d 376 (2008).