Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/22/2019 08:05 AM CDT

Salem Grain Company, Inc., a Nebraska
corporation, et al., appellants, v.
City of Falls City et al., appellees.
___ N.W.2d ___

Filed March 22, 2019.    No. S-17-277.

1. **Declaratory Judgments: Appeal and Error.** In an appeal from a declaratory judgment, an appellate court, regarding questions of law, has an obligation to reach its conclusion independently of the conclusion reached by the trial court.

2. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

3. **Actions: Equity: Public Meetings: Appeal and Error.** An appellate court reviews actions for relief under the Open Meetings Act in equity because the relief sought is in the nature of a declaration that action taken in violation of the act is void or voidable.

4. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court. But when credible evidence is in conflict on material issues of fact, an appellate court may give weight to the fact the trial court observed the witnesses and accepted one version of the facts over another.

5. **Statutes.** Statutes relating to the same subject, though enacted at different times, are in pari materia and should be construed together.

6. **Statutes: Legislature: Intent.** Statutes relating to the same subject should be construed together to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.

7. ____: ____: ____. When two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed legislative intention to

the contrary, to regard each as effective, and to harmonize overlapping statutes so long as each reaches some distinct cases.

8. **Statutes.** Where it is possible to harmonize apparently conflicting statutes, a court should do so.

9. **Actions: Bonds: Contracts: Statutes: Presumptions: Time.** Construed together, Neb. Rev. Stat. §§ 18-2129 and 18-2142.01 (Reissue 2012) effectively provide that any suit, action, or proceeding brought outside the 30-day period established in § 18-2142.01 will be subject to the conclusive presumptions required by §§ 18-2129 and 18-2142.01, as long as the action is one challenging the validity or enforceability of a redevelopment bond or contract and the bond or contract recites in substance the language required by the statutes.

10. **Statutes: Legislature: Intent.** In the absence of clear legislative intent, a construction of a statute will not be adopted which has the effect of nullifying or repealing another statute.

11. **Statutes.** It is not within the province of the courts to read a meaning into a statute which is not there.

12. **Pleadings.** An affirmative defense raises a new matter which, assuming the allegations in the petition or complaint to be true, constitutes a defense to the merits of a claim asserted in the petition. An affirmative defense generally avoids, rather than negates, the plaintiff's prima facie case.

13. **Statutes: Presumptions: Limitations of Actions.** A statute providing a conclusive presumption is very different from a statute of limitations, and the conclusive presumptions under Neb. Rev. Stat. §§ 18-2129 and 18-2142.01 (Reissue 2012) are not statutes of limitation.

14. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by these rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

15. **Judges: Evidence: Appeal and Error.** The exercise of judicial discretion is implicit in determining the relevance of evidence, and an appellate court will not reverse a trial court's decision regarding relevance absent an abuse of discretion.

16. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

17. **Evidence: Words and Phrases.** Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Appeal from the District Court for Richardson County: Daniel E. Bryan, Jr., Judge. Affirmed.

Stephen D. Mossman, Ryan K. McIntosh, and J.L. Spray, of Mattson Ricketts Law Firm, for appellants.

John M. Guthery, Jeanette Stull, and Derek A. Aldridge, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., for appellee Community Redevelopment Authority of the City of Falls City.

Terry C. Dougherty, Kari A.F. Scheer, and Audrey R. Svane, of Woods & Aitken, L.L.P., for appellee Consolidated Grain and Barge Co.

Michael R. Dunn, of Halbert, Dunn & Halbert, L.L.P., for appellee City of Falls City.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ., and Vaughan, District Judge.

Stacy, J.
This is the latest in a series of appeals involving litigation over a redevelopment project in the City of Falls City, Nebraska.[1] In this case, the plaintiffs filed suit seeking a declaratory judgment that the redevelopment project was not planned or adopted in accordance with the Community Development Law[2] and requesting a permanent injunction to prevent the project from proceeding. Most of the plaintiffs' claims were dismissed on summary judgment, and the remaining claims were dismissed after a bench trial. The plaintiffs appeal. Although our reasoning differs from that of the district court, we affirm.

---

[1] See, *Salem Grain Co. v. Consolidated Grain & Barge Co.*, 297 Neb. 682, 900 N.W.2d 909 (2017); *Frederick v. City of Falls City*, 295 Neb. 795, 890 N.W.2d 498 (2017); *Frederick v. City of Falls City*, 289 Neb. 864, 857 N.W.2d 569 (2015).

[2] Neb. Rev. Stat. §§ 18-2101 to 18-2144 (Reissue 2012).

## I. BACKGROUND

### 1. Redevelopment Project

Falls City is a community located in Richardson County, Nebraska. Pursuant to the Community Development Law, Falls City created the five-member Falls City Community Redevelopment Authority (the Authority) to redevelop blighted or substandard areas within Falls City.[3]

In 2012, Consolidated Grain and Barge Co. (Consolidated Grain) proposed a redevelopment project that involved constructing a new commercial grain receiving, storage, and shipping facility in Falls City using tax increment financing (TIF). The owner of another commercial grain facility in the area, Salem Grain Company, Inc. (Salem Grain), opposed the redevelopment project.

During the summer and fall of 2012, land for the redevelopment project was annexed by Falls City, a zoning change was recommended and approved for the annexed land, a study was conducted upon which the land was declared blighted and substandard, a cost-benefit analysis was conducted, and a redevelopment plan was prepared. Ultimately, in September and October 2012, the redevelopment project was approved at separate public meetings of the Authority, the city council of Falls City, and the planning commission of Falls City.

On November 10, 2012, the Authority and Consolidated Grain formally entered into a redevelopment contract. Summarized, the redevelopment contract required Consolidated Grain to acquire the land for the project and construct the grain facility, and in exchange, the Authority agreed to enter into and utilize TIF indebtedness to fund a portion of the project. Thereafter, a TIF bond in the amount of $3,710,000 was issued by the Authority and sold to Consolidated Grain. The bond funds were disbursed to Consolidated Grain pursuant to the redevelopment contract. Roughly 1 year later, Consolidated

---

[3] See § 18-2101.01.

Grain completed construction of the commercial grain facility and began business operations.

## 2. Lawsuit

### (a) Original Complaint

On October 24, 2012, approximately 2 weeks before the redevelopment contract was formally entered into, Salem Grain and two residents of Falls City (collectively Salem Grain) filed a lawsuit against the City of Falls City, the Authority, and Consolidated Grain in the district court for Richardson County, Nebraska. The complaint sought declaratory and injunctive relief and was styled as 12 separate causes of action.

The first 11 causes of action sought declarations that the redevelopment project had not been planned and adopted in accordance with the Community Development Law, alleging specifically that (1) the blighted and substandard study was insufficient, (2) the redevelopment plan did not conform to a "'general plan'" for the development of Falls City, (3) the Authority acted without a quorum at several key meetings, (4) the cost-benefit analysis was insufficient, (5) it was improper to include TIF in the redevelopment plan, (6) the redevelopment plan was improperly adopted by the city council, (7) the redevelopment plan was improperly adopted by the Authority, (8) the city council impermissibly renamed a portion of the platted land included in the redevelopment project, (9) Falls City provided an insufficient public comment period regarding its plan to finance the redevelopment project using community development block grant program funds, (10) the Authority's adoption of the resolution approving TIF was null and void, and (11) the land for the redevelopment project was improperly annexed. Salem Grain's 12th cause of action sought to equitably estop the city council from asserting that the redevelopment project was not feasible without TIF funding.

The prayer for relief sought (1) declarations that the redevelopment project was not properly planned or adopted for all of the reasons alleged in the various causes of action; (2) a

declaration that because the project was not properly adopted, the "Redevelopment Contract, and any bonds issued thereto, are null and void"; and (3) a permanent injunction blocking the redevelopment project from proceeding.

Falls City, the Authority, and Consolidated Grain (collectively the defendants) moved to dismiss the original complaint for reasons that are not relevant to the issues on appeal. The district court granted the motion to dismiss, and Salem Grain was given leave to file an amended complaint.

(b) Amended Complaint

The amended complaint was filed January 22, 2013, and is the operative complaint in this action. Like the original complaint, the amended complaint was styled as 12 causes of action. The first 11 sought declarations that the redevelopment project had not been planned and adopted in accordance with the Community Development Law for generally the same reasons alleged in the original complaint.

The 12th cause of action alleged the Authority held two meetings which violated Nebraska's Open Meetings Act[4] (NOMA), and it sought to have the actions taken during those meetings declared void.[5] The first meeting allegedly occurred on August 15, 2012, when three members of the Authority attended a community dinner that included the mayor, members of the city council, community business leaders, and representatives from Consolidated Grain. The second meeting allegedly occurred on November 9, in the context of email communications between members of the Authority.

Like the original complaint, the amended complaint sought (1) declarations that the redevelopment project was not properly adopted for all of the reasons alleged in the various causes of action; (2) a declaration that because the project was not properly adopted the "Redevelopment Contract, and any bonds issued thereto, are null and void"; and (3) a permanent

---

[4] Neb. Rev. Stat. §§ 84-1407 to 84-1414 (Reissue 2008 & Supp. 2011).

[5] See § 84-1414.

injunction blocking the redevelopment project from proceeding. In addition, the amended complaint sought a declaration that any formal action taken by the Authority in violation of NOMA was void.[6]

After the amended complaint was filed, the court dismissed the 11th cause of action for reasons that are not relevant to the issues on appeal. Thereafter, answers were filed and the defendants proceeded to defend the amended complaint on the merits. Due to the procedural complexity of this case, we discuss only that which relates to the issues raised on appeal.

### (c) Completion of Redevelopment Project

While the lawsuit was pending, the redevelopment project was completed. It is undisputed that the project was completed in September 2013 and that Consolidated Grain has been operating the commercial grain receiving, storage, and shipping facility since that time.

### (d) Motion to File Second Amended Complaint

On December 17, 2015, nearly 2 years after completion of the redevelopment project, Salem Grain tried unsuccessfully to further amend its complaint. The proposed second amended complaint sought to add claims of "improper economic development" and "unjust enrichment" resulting from the TIF funds provided to Consolidated Grain. The proposed second amended complaint also sought to alter the nature of the relief being requested; rather than seeking injunctive relief to prevent the redevelopment project from proceeding, the proposed second amended complaint sought "[r]ecission, recoupment and restitution" of the TIF funds paid to Consolidated Grain.

After a hearing, the district court denied leave to amend, finding that Salem Grain's request was unnecessarily delayed and that the proposed amendment would be unduly prejudicial to the defendants.

---

[6] See *id.*

#### (e) Summary Judgment

In April 2016, the defendants moved for summary judgment on the amended complaint, claiming the requested declaratory and injunctive relief had been rendered moot by completion of the redevelopment project. The district court agreed and granted partial summary judgment in favor of the defendants on Salem Grain's first 10 causes of action. But the court denied summary judgment on the 12th cause of action alleging NOMA violations, reasoning that the completion of the redevelopment project had not rendered the NOMA claims moot. A bench trial was set to resolve the remaining NOMA claims.

#### (f) Motion to File Third
#### Amended Complaint

As the date for the bench trial neared, Salem Grain filed a motion to continue trial and again requested leave to further amend its complaint. Salem Grain's proposed third amended complaint was substantially similar to the proposed second amended complaint which had not been permitted, but it alleged several additional NOMA violations. The district court overruled the motion to amend and refused to continue the bench trial.

#### (g) Trial

The bench trial on the alleged NOMA violations was held on February 9, 2017. Salem Grain tried to offer evidence related to several alleged NOMA violations, but the defendants objected on relevancy grounds and the district court limited the evidence to the violations alleged in the operative complaint: the August 15, 2012, dinner and the November 9, 2012, email communications.

Salem Grain argued that both the August 15, 2012, dinner and the November 9 email communications were "meetings" of the Authority under § 84-1409, and it sought to have any action taken on the redevelopment project during these meetings declared void under § 84-1414. After considering the evidence,

the district court concluded that neither event was a meeting of the Authority under NOMA.

Regarding the dinner, the district court found it was hosted by the Falls City Economic Development and Growth Enterprise, and was attended by many Falls City community leaders, including three members of the Authority. At the dinner, which some witnesses described as a "meet-and-greet," Consolidated Grain gave a presentation regarding its interest in constructing the grain facility. Salem Grain argued that because of the presentation, members of the Authority were essentially "brief[ed]" by Consolidated Grain during the dinner and later used that information to approve the redevelopment project. The district court found the dinner was not a meeting that required compliance with NOMA, reasoning that there was insufficient evidence regarding the substance of the information actually presented at the dinner and that there was no direct evidence any Authority member used the information in later approving the redevelopment project.

Regarding the November 9, 2012, email communications, the court found an email had been sent by the Authority's chairman to all Authority members. The email advised that Salem Grain had recently filed a lawsuit and told the members that the chairman intended to proceed with executing the redevelopment contract with Consolidated Grain, but that he would be adding amendments recommended by counsel to (1) disclose the lawsuit and (2) add language to the existing indemnification provision. Prior to November 9, the Authority had approved the redevelopment contract with Consolidated Grain during a public meeting and had adopted a resolution authorizing the chairman to "take any and all actions, and to execute any and all documents" deemed necessary to conclude the transaction. The chairman's November 9 email stated:

> Should any [Authority] member find need to discuss and/or act upon these matters, notice needs to be provided to me by 8 pm today (11/9/12) so that I may schedule a special meeting for that purpose. Otherwise, you are

hereby notified that I intend to execute the Redevelopment
Contract as previously authorized by the [Authority] with
the above cited immaterial changes recommended by
legal counsel and proceed with the issuance of bonds and
a TIF Grant to Consolidated Grain . . . .

All members of the Authority responded via email to the chair-
man, indicating that a special meeting was not necessary and
that the chairman could proceed to execute the redevelopment
contract pursuant to the earlier resolution. The district court
found this email exchange was not a "meeting" as defined
in § 84-1409(2), reasoning that no new action was taken or
authorized by the Authority during this exchange beyond that
which already had been taken or authorized during the earlier
public meeting.

After concluding Salem Grain had not met its burden of
proving either alleged violation of NOMA, the court entered
an order dismissing the action. No attorney fees were allowed.
Salem Grain timely appealed, and we moved the case to
our docket.

## II. ASSIGNMENTS OF ERROR

Salem Grain assigns, restated, that the district court erred in
(1) making certain discovery rulings, (2) denying Salem Grain
leave to file a second amended complaint, (3) granting the
defendants' motion for partial summary judgment, (4) deny-
ing Salem Grain leave to file a third amended complaint, (5)
denying Salem Grain's motion to continue trial, (6) excluding
evidence of additional NOMA violations at trial, and (7) dis-
missing the NOMA claims after trial.

## III. STANDARD OF REVIEW

[1,2] In an appeal from a declaratory judgment, an appellate
court, regarding questions of law, has an obligation to reach
its conclusion independently of the conclusion reached by
the trial court.[7] Statutory interpretation presents a question of

---

[7] *Ray Anderson, Inc. v. Buck's, Inc.*, 300 Neb. 434, 915 N.W.2d 36 (2018).

law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[8]

[3,4] An appellate court reviews actions for relief under NOMA in equity because the relief sought is in the nature of a declaration that action taken in violation of the act is void or voidable.[9] On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court.[10] But when credible evidence is in conflict on material issues of fact, we consider and may give weight to the fact the trial court observed the witnesses and accepted one version of the facts over another.[11]

## IV. ANALYSIS

### 1. Supplemental Briefing

After oral argument, the parties were ordered to file supplemental briefs (1) addressing whether Salem Grain brought its lawsuit within the timeframe set forth in § 18-2142.01 and (2) analyzing the impact, if any, of this court's holding in *Community Dev. Agency v. PRP Holdings*[12] on Salem Grain's claims. This briefing was requested to assist the court in determining whether the conclusive presumptions contained in the Community Development Law[13] have any effect on Salem Grain's action challenging the validity and enforceability of the redevelopment contract and bonds.

---

[8] *Salem Grain Co., supra* note 1.

[9] *Schauer v. Grooms*, 280 Neb. 426, 786 N.W.2d 909 (2010).

[10] *Id.*

[11] *Id.*

[12] *Community Dev. Agency v. PRP Holdings*, 277 Neb. 1015, 767 N.W.2d 68 (2009).

[13] See §§ 18-2129 and 18-2142.01.

Salem Grain's supplemental briefing urges this court to find that the reasoning of *PRP Holdings* is inapplicable and that the conclusive presumption does not foreclose its claims under the Community Development Law. The defendants, in a joint supplemental brief, argue just the opposite. Although they advance different statutory interpretations, no party raises a constitutional challenge to any provision of the Community Development Law. Because we find the applicability of the conclusive presumption to be dispositive of Salem Grain's claims under the Community Development law, we begin our analysis with an overview of the relevant statutory scheme.

## 2. CONCLUSIVE PRESUMPTIONS UNDER COMMUNITY DEVELOPMENT LAW

In 1951, the Nebraska Legislature passed an act referred to as the Community Development Law.[14] Included in that act is § 18-2129, which at the time of the instant litigation provided:

> In any suit, action, or proceedings involving the validity or enforceability of any bond of an authority or the security therefor, any such bond reciting in substance that it has been issued by the authority to aid in financing a redevelopment project, as herein defined, shall be conclusively deemed to have been issued for such purpose and such project shall be conclusively deemed to have been planned, located, and carried out in accordance with the purposes and provisions of [the Community Development Law].[15]

Section 18-2129 applies only to certain suits, actions or proceedings—those involving the validity and enforceability of bonds issued by a community redevelopment authority where the bond recites certain language. But when these factual predicates are met, § 18-2129 applies to more than just

---

[14] 1951 Neb. Laws, ch. 224, § 1, p. 797 (currently codified at § 18-2101).

[15] See 1951 Neb. Laws, ch. 224, § 10(6), p. 813.

the redevelopment bonds and requires a court to "conclusively deem[]" the entire redevelopment project to have been planned, located, and carried out in accordance with the Community Development law. The Community Development Law does not expressly label this a "conclusive presumption," but we adopt that term for ease of reference because it accurately describes the legal effect of the statutory language.

In 1997, the Legislature added another statute[16] to the act which, as we explain below, created a narrow exemption from the conclusive presumption established by § 18-2129. But before we discuss the 1997 statute, we discuss the nature of conclusive presumptions generally.

Commentators have observed that a conclusive presumption "is not a presumption at all, but rather, a substantive rule of law directing that proof of certain basic facts conclusively proves an additional fact which cannot be rebutted."[17] The legislative decision to make a presumption conclusive is one based on "overriding social policy"[18] and typically "rest[s] upon grounds of expediency or public policy so compelling in character as to override the requirement of proof."[19] The Utah Supreme Court has explained that "[w]hen the Legislature includes a conclusive presumption in a statute, [it is] stating that the objective promoted by the conclusive presumption is of greater importance than the opportunity to present facts challenging the presumed fact."[20]

It has been observed that conclusive presumptions frequently occur in statutes pertaining to decisions of governmental

---

[16] 1997 Neb. Laws, L.B. 875 (currently codified at § 18-2142.01).

[17] 29 Am. Jur. 2d *Evidence* § 201 at 215 (2008). Accord 1 Clifford S. Fishman, Jones on Evidence Civil and Criminal § 4:57 (7th ed. 1992).

[18] 1 Fishman, *supra* note 17 at 393.

[19] 29 Am. Jur. 2d, *supra* note 17, citing *U.S. v. Provident Trust Co.*, 291 U.S. 272, 54 S. Ct. 389, 78 L. Ed. 793 (1934).

[20] *Davis v. Provo City Corp.*, 193 P.3d 86, 90-91 (Utah 2008).

entities.[21] This is certainly the case in Nebraska, where conclusive presumptions appear in several different statutes addressing suits brought to challenge the actions of governmental entities.[22] Some of these Nebraska statutes reference a point in time after which the conclusive presumption applies,[23] and others do not contain any temporal limitation.[24] But regardless, when considering the application of conclusive presumptions, it is important to understand they are evidentiary rules affecting the merits of an action and not procedural time limits on bringing an action.[25]

As stated, Nebraska's Community Development Law contains two separate statutes governing conclusive presumptions. The first is § 18-2129, which was quoted above. The other is § 18-2142.01, enacted in 1997, which provides:

(1) In any suit, action, or proceeding involving the validity or enforceability of any bond of a city, village, or authority or the security therefor brought after the lapse of thirty days after the issuance of such bonds has been authorized, any such bond reciting in substance that it has been authorized by the city, village, or authority to aid in financing a redevelopment project shall be conclusively deemed to have been authorized for such purpose and

---

[21] *Davis, supra* note 20.

[22] See, e.g., Neb. Rev. Stat. § 13-1109 (Reissue 2012); Neb. Rev. Stat. § 13-2512 (Reissue 2012); §§ 18-2129 and 18-2142.01; Neb. Rev. Stat. §§ 18-2424 and 18-2434 (Reissue 2012); Neb. Rev. Stat. § 58-519 (Reissue 2010); Neb. Rev. Stat. § 70-1406(5) (Reissue 2018); Neb. Rev. Stat. § 71-15,116 (Reissue 2018).

[23] See, e.g., § 13-1109(3) (conclusive presumption applies to actions "brought after the lapse of thirty days after" contract is formally entered into or issuance of bonds has been authorized); § 18-2142.01 (same); § 58-519 (conclusive presumption applies in actions "brought after the lapse of thirty days after the bonds are issued").

[24] See, e.g., §§ 13-2512, 18-2129, 18-2424, 18-2434, 70-1406(5), and 71-15,116.

[25] *Davis, supra* note 20.

such redevelopment project shall be conclusively deemed to have been planned, located, and carried out in accordance with the purposes and provisions of the Community Development Law . . . .

(2) In any suit, action, or proceeding involving the validity or enforceability of any agreement of a city, village, or authority brought after the lapse of thirty days after the agreement has been formally entered into, any such agreement reciting in substance that it has been entered into by the city, village, or authority to provide financing for an approved redevelopment project shall be conclusively deemed to have been entered into for such purpose and such project shall be conclusively deemed to have been planned, located, and carried out in accordance with the purposes and provisions of the Community Development Law . . . .

Neither § 18-2129 nor § 18-2142.01 expressly references the other, but both statutes relate to the same subject matter: application of a conclusive presumption in actions brought to challenge redevelopment contracts and bonds under the Community Development Law. Section 18-2129 addresses actions brought to challenge bonds of a redevelopment authority, while § 18-2142.01 addresses actions brought to challenge both redevelopment bonds and redevelopment contracts. But under both statutes, when the factual predicates are met and the conclusive presumption applies, courts are required to deem the entire redevelopment project to have been "planned, located, and carried out in accordance with the purposes and provisions of" the Community Development Law.[26]

Despite their similarities, there is tension between §§ 18-2129 and 18-2142.01. The former contains no temporal restriction on application of the conclusive presumption, but the latter expressly identifies a time period *after which* the

---

[26] § 18-2129. Accord § 18-2142.01(1) and (2).

conclusive presumption applies.[27] This is our first opportunity to construe this competing language, and in doing so, we are guided by well-settled principles of statutory construction.

[5-7] Long ago we recognized the fundamental principle that statutes relating to the same subject, although enacted at different times, are in pari materia and should be construed together.[28] Because §§ 18-2129 and 18-2142.01 address the same conclusive presumption under the Community Development Law, we construe them together to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.[29] And when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed legislative intention to the contrary, to regard each as effective, and to harmonize overlapping statutes "so long as each reaches some distinct cases."[30]

The conclusive presumption established in § 18-2129 already existed when § 18-2142.01 was enacted, but the two statutes plainly overlap. The conclusive presumption under § 18-2129 applies to all suits challenging the validity or enforceability of a redevelopment bond, without regard to when the suit was brought. The conclusive presumption under § 18-2142.01 also applies to suits challenging redevelopment bonds (as well as contracts), but that statute only applies the conclusive presumption to suits "brought after the lapse of thirty days after" the issuance of the bonds has been authorized[31] or the contract has been formally entered into.[32]

---

[27] See § 18-2142.01(1) ("after the lapse of thirty days after" triggering event). Accord § 18-2142.01(2).

[28] *Enyeart v. City of Lincoln*, 136 Neb. 146, 285 N.W. 314 (1939).

[29] See *State v. McGuire*, 301 Neb. 895, 921 N.W.2d 77 (2018).

[30] See *Citizens of Humanity v. Applied Underwriters*, 299 Neb. 545, 560, 909 N.W.2d 614, 627 (2018), *cert. denied* ___ U.S. ___, 139 S. Ct. 274, 202 L. Ed. 2d 135, quoting *J. E. M. Ag Supply, Inc. v. Pioneer Hi-Bred International, Inc.*, 534 U.S. 124, 122 S. Ct. 593, 151 L. Ed. 2d 508 (2001).

[31] § 18-2142.01(1).

[32] § 18-2142.01(2).

[8] Where it is possible to harmonize apparently conflicting statutes, a court should do so.[33] Reading the plain text of §§ 18-2129 and 18-2142.01 together, we conclude they can be harmonized, and each can be given effect, if § 18-2129 is understood to create a conclusive presumption that applies anytime the factual predicates are met and § 18-2142.01 is understood to modify that conclusive presumption by creating a narrow exemption for actions brought during the 30-day period after the contract is formally entered into or the bond is authorized to be issued.

[9] So construed, §§ 18-2129 and 18-2142.01 together effectively provide that any suit, action, or proceeding brought outside the 30-day period established in § 18-2142.01 will be subject to the conclusive presumptions required by §§ 18-2129 and 18-2142.01, as long as the action is one challenging the validity or enforceability of a redevelopment bond or contract and the bond or contract recites in substance the language required by the statutes.

Although not dispositive, we note the legislative history supports such a construction. Ordinarily, when construing statutes, we look no further than the plain text.[34] But a court may inquire into legislative history when a statute is open to construction because its terms require interpretation or may reasonably be considered ambiguous.[35] The senator who introduced what became § 18-2142.01 described it as creating "a 30-day window" to challenge the validity and enforceability of redevelopment bonds and contracts, before the conclusive presumption applied.[36] Without any discussion of § 18-2129, we adopted a similar interpretation in *PRP Holdings*.[37]

---

[33] See *Hoiengs v. County of Adams*, 254 Neb. 64, 574 N.W.2d 498 (1998).

[34] See *McGuire, supra* note 29.

[35] *Id*.

[36] See Floor Debate, L.B. 875, 95th Leg., 1st Sess. 8095 (May 22, 1997) (remarks of Senator Paul Hartnett).

[37] *PRP Holdings, supra* note 12.

In that case, the community development agency (Agency) entered into a redevelopment contract to convert a building into apartments. The redevelopment contract included TIF funding. After the redevelopment project was completed, it was sold to a subsequent purchaser. The Agency, claiming the subsequent purchaser was not entitled to TIF funds, brought a lawsuit seeking to have the redevelopment contract declared void ab initio, alleging it failed to comply with the Community Development Law. The district court found the conclusive presumption under § 18-2142.01(2) foreclosed the Agency from contesting the redevelopment contract's validity. On appeal, we agreed. After reciting the provisions of § 18-2142.01(2), we explained the purpose and effect of that statute as follows:

> The Legislature has set a specific window of time during which a party can challenge a redevelopment contract. Under the statute, after the window has closed, the contract has conclusively complied with the [Community Development Law] and Neb. Rev. Stat. §§ 18-2145 to 18-2154 (Reissue 1997). In short, § 18-2142.01(2) provides finality and gives all parties to a contract that provides financing for a redevelopment project a green light to proceed. *The only exception is if a suit or other proceeding is initiated within 30 days of the parties' formally entering into the contract.*[38]

In *PRP Holdings*, we found the redevelopment agreement at issue was "formally entered into" when the redevelopment contract was signed by the Agency and the redevelopers,[39] and we found the Agency's declaratory judgment action challenging the validity of that agreement was not filed until 8 years later. Because the Agency had not filed suit to contest the

---

[38] *Id.* at 1020, 767 N.W.2d at 72 (emphasis supplied).

[39] *Id.* at 1016, 767 N.W.2d at 70. See § 18-2103(15) (defining "[r]edevelopment contract" as "a contract entered into between an authority and a redeveloper for the redevelopment of an area in conformity with a redevelopment plan").

validity of the redevelopment agreement "within 30 days after the contract was signed," we found it was precluded from contesting the contract's validity and we did not address the merits of the claim being raised, reasoning that "§ 18-2142.01(2) forecloses all of the Agency's arguments."[40]

In *PRP Holdings*, we considered the application of the conclusive presumption to an action brought after the 30-day time period in § 18-2142.01. The instant appeal requires us to consider how, if at all, the conclusive presumption applies in an action brought before the commencement of that 30-day time period.

### 3. Conclusive Presumption Applies to Salem Grain's Claims

No party disputes that Salem Grain's suit falls within the category of actions governed by §§ 18-2129 and 18-2142.01. Salem Grain admits this action was brought to challenge the validity and enforceability of the redevelopment contract and the bonds issued pursuant thereto, and the record shows the necessary statutory language was recited in substance in both the redevelopment contract and the bond.

But Salem Grain argues the conclusive presumption should not apply to foreclose its claims, because its lawsuit was already on file when the 30-day window opened under § 18-2142.01. Salem Grain asks us to find, summarized, that § 18-2142.01 exempts from the conclusive presumption not only those actions brought during the 30-day period after the redevelopment contract is executed or the bond is authorized to be issued, but also those actions already pending at that point. We must reject this interpretation for two reasons.

[10] First, Salem Grain's position would require that we construe the statutory scheme in a manner that effectively nullifies § 18-2129. But the Legislature did not repeal § 18-2129 upon enacting § 18-2142.01 in 1997. And in 2018, when the Community Development Law was amended, both statutes

---

[40] *PRP Holdings, supra* note 12, 277 Neb. at 1019, 1020, 767 N.W.2d at 72.

were retained and updated.[41] Under the statutory scheme, § 18-2129 creates a conclusive presumption that applies to any action challenging the validity or enforceability of a bond reciting the statutory language—and this necessarily includes actions already pending at the time such a redevelopment bond is issued. In the absence of clear legislative intent, a construction of a statute will not be adopted which has the effect of nullifying or repealing another statute.[42] We decline to interpret § 18-2142.01 in a manner that would effectively nullify § 18-2129.

[11] Next, we must reject Salem's Grain's position because it advocates the judicial expansion of the narrow category of suits which the Legislature has chosen to exempt from the conclusive presumption. While there may be sound policy reasons for the Legislature to expand the 30-day exemption under § 18-2142.01 to include suits already pending when a redevelopment contract is formally entered into or a bond is authorized to be issued, it has not done so. And it is not within the province of the courts to read a meaning into a statute which is not there.[43] We decline Salem Grain's invitation to construe § 18-2142.01(2) in a way that expands the category of cases exempted from the conclusive presumption established by the Legislature.

We instead adhere to the construction of § 18-2142.01 we articulated in *PRP Holdings*.[44] When a redevelopment contract or bond recites in substance the language set out in § 18-2142.01(1) and (2), that statute establishes a specific window of time during which a party may challenge the validity or enforceability of the redevelopment contract or bond, unencumbered by the conclusive presumption under the Community

---

[41] See 2018 Neb. Laws, L.B. 874, §§ 23 and 30.

[42] *State ex rel. City of Elkhorn v. Haney*, 252 Neb. 788, 566 N.W.2d 771 (1997).

[43] *Stewart v. Nebraska Dept. of Rev.*, 294 Neb. 1010, 885 N.W.2d 723 (2016).

[44] *PRP Holdings, supra* note 12.

Development Law. That window opens on the date the redevelopment contract is formally entered into[45] or the bond is authorized to be issued,[46] and it closes 30 days later. And while the plain text of § 18-2142.01 does not apply the conclusive presumption to actions brought before this 30-day period, the conclusive presumption of § 18-2129 applies to all actions regardless of when they are brought.

When §§ 18-2129 and 18-2142.01 are construed together, the effect is that any suit, action, or proceeding brought outside the 30-day period established in § 18-2142.01 will be subject to the conclusive presumptions required by §§ 18-2129 and 18-2142.01, assuming the action is one challenging the validity or enforceability of a redevelopment bond or contract and the bond or contract recites in substance the language required by the statutes. We emphasize that this construction is applied only because the Legislature chose to include both §§ 18-2129 and 18-2142.01 in the Community Development Act and both statutes must, if possible, be given effect. The construction articulated here would not be required in the absence of either § 18-2129 or § 18-2142.01.

No party raises it as an issue in the present case, but we pause here to point out a practical challenge presented by the statutory scheme. The Community Development Law does not require that a redevelopment contract be executed during a public meeting.[47] Nor does it require that the public be given notice of either the date a redevelopment agreement is "formally entered into" or the date a bond is "authorized" to be issued for purposes of § 18-2142.01. Consequently, while parties to the redevelopment agreement and those who are involved in or closely following the redevelopment project may have personal knowledge of when the 30-day time period under § 18-2142.01 begins to run, others may not. This could

---

[45] § 18-2142.01(2).

[46] § 18-2142.01(1).

[47] See § 18-2119(1).

present a practical challenge for those wishing to challenge the validity or enforceability of a redevelopment contract or bond within the 30-day window under § 18-2142.01. But the proper role of this court is to declare the law as it finds it,[48] not to redesign the statutory scheme. Consideration of whether the Community Development Law should include some form of public notice when a redevelopment agreement is executed or the issuance of a bond is authorized is a policy matter for the Legislature.

To summarize, when Salem Grain filed its suit on October 24, 2012, challenging the validity and enforceability of the redevelopment contract and bond, no conclusive presumption yet applied under § 18-2129 because, at that point, the factual predicates of the statute had not been met. Specifically, no redevelopment contract had yet been executed, so no bond had yet been issued and it was not possible to determine whether the bond recited in substance the language required by § 18-2129.

But later, when the redevelopment contract was executed and the bond was issued, reciting in substance the requisite language, the action became one to which the conclusive presumption under § 18-2129 applied as a matter of law. And assuming without deciding that an amended complaint brought within the 30-day period "after the lapse of thirty days after" the contract was executed and the bond was issued could trigger the narrow exemption created by § 18-2142.01, Salem Grain's amended complaint was filed outside that time period. On these facts, the conclusive presumption under § 18-2129 applied as a matter of law as soon as the factual predicates were met, and the narrow 30-day exemption under § 18-2142.01 was never triggered.

Thus, as a matter of law, the conclusive presumption mandated by § 18-2129 applies to Salem Grain's suit and requires

---

[48] *Woodmen of the World v. Nebraska Dept. of Rev.*, 299 Neb. 43, 907 N.W.2d 1 (2018).

that the redevelopment project at issue "shall be conclusively deemed to have been planned, located, and carried out in accordance with the purposes and provisions of" the Community Development Law.[49] This conclusive presumption is nonrebuttable, and it forecloses all of Salem Grain's alleged challenges to the validity and enforceability of the redevelopment contract and the bond issued pursuant thereto, under the Community Development Law.

Therefore, although our reasoning differs from that applied by the district court, we find no error in the court's dismissal of Salem Grain's first 10 causes of action. Moreover, because all of Salem Grain's claims under the Community Development Act are foreclosed by the conclusive presumption, there could be no reversible error in the trial court's discovery rulings on those claims or in its refusal to allow Salem Grain to further amend its complaint to present additional challenges to the validity and enforceability of the redevelopment agreement and the bond.

### (a) Conclusive Presumption Is Not Affirmative Defense

Salem Grain equates the conclusive presumption to a statute of limitations and argues it should not apply here because it was not raised below as an affirmative defense. The defendants' answers included the general allegation that the amended complaint failed to state a claim upon which relief could be granted, but Salem Grain is correct that no defendant alleged the claims were foreclosed by application of the conclusive presumption.

Nebraska's pleading rules require that certain enumerated defenses "and any other matter constituting an avoidance or affirmative defense" must be pled in a defendant's answer.[50] But the conclusive presumptions of §§ 18-2129 and 18-2142.01

---

[49] § 18-2129. Accord § 18-2142.01(1) and (2).

[50] Neb. Ct. R. Pldg. § 6-1108(c).

are neither affirmative defenses nor statutes of limitations, and the fact that they were neither alleged nor argued below does not preclude their application, as a matter of substantive law, to this case.

[12] An affirmative defense raises a new matter which, assuming the allegations in the petition or complaint to be true, constitutes a defense to the merits of a claim asserted in the petition.[51] It generally avoids, rather than negates, the plaintiff's prima facie case.[52]

[13] A statute of limitations is an affirmative defense,[53] but "[a] statute providing a conclusive presumption is very different from a statute of limitations."[54] The purpose of a statute of limitations is to prevent recovery of stale claims.[55] In contrast, a conclusive presumption is "a substantive rule of law directing that proof of certain basic facts conclusively proves an additional fact which cannot be rebutted."[56] The conclusive presumptions under §§ 18-2129 and 18-2142.01 are not procedural statutes of limitations.

Nor are they affirmative defenses. The statutory mandate that a redevelopment project "shall be conclusively deemed to have been planned, located, and carried out in accordance with the purpose and provisions of" the Community Development Law[57] does not raise a new matter or constitute a defense to the merits of the claim. Rather, as explained previously, it is a substantive evidentiary rule that forecloses or negates any proof

---

[51] See, *Armstrong v. Clarkson College*, 297 Neb. 595, 901 N.W.2d 1 (2017); *ACI Worldwide Corp. v. Baldwin Hackett & Meeks*, 296 Neb. 818, 896 N.W.2d 156 (2017).

[52] John P. Lenich, Nebraska Civil Procedure § 12:11 (2018).

[53] See § 6-1108(c).

[54] *Davis, supra* note 20, 193 P.3d at 89.

[55] *Becker v. Hobbs*, 256 Neb. 432, 441, 590 N.W.2d 360, 366 (1999).

[56] 29 Am. Jur. 2d, *supra* note 17, § 201 at 215. Accord 1 Fishman, *supra* note 17.

[57] § 18-2129. Accord § 18-2142.01(1) and (2).

to the contrary. Stated differently, when the factual predicates are met, §§ 18-2129 and 18-2142.01 establish the legal standard courts must apply to actions brought outside the 30-day window challenging the validity or enforceability of redevelopment agreements and bonds.[58] The fact that the conclusive presumption was neither alleged nor argued below does not affect its applicability as a matter of substantive law.

### (b) Community Development Law and NOMA Claims

Finally, Salem Grain argues that even if the conclusive presumption applies to foreclose its claims under the Community Development Law, it should have no effect on Salem Grain's NOMA claims related to the redevelopment project. It contends that regardless of the conclusive presumption under the Community Development Law, NOMA provides a separate legal basis for declaring void any resolution made or formal action taken by the Authority in violation of NOMA.

Salem Grain alleged multiple causes of action, including NOMA violations, to support its ultimate request that the redevelopment contract and any bonds issued pursuant thereto be declared null and void. The question becomes whether, in light of the conclusive presumption required by §§ 18-2129 and 18-2142.01, any violation of NOMA could affect the validity and enforceability of the redevelopment contract and bonds.

There is potential tension between the conclusive presumptions under the Community Development Law and the provisions under § 84-1414 for declaring void a resolution made or formal action taken by a public body in violation of NOMA. That is because the Community Development Law contains express provisions governing the public hearing and notice requirements for redevelopment plans[59] and also makes clear

---

[58] *PRP Holdings, supra* note 12.

[59] See, e.g., §§ 18-2109, 18-2115, 18-2115.01, and 18-2119 (Cum. Supp. 2018).

that the Community Development Law "shall be full authority for the . . . exercise of the powers therein granted to a city or village and to such authority" and that "[i]nsofar as the provisions of [the Community Development Law] are inconsistent with the provisions of any other law . . . the provisions of [the Community Development Law] shall be controlling."[60]

When the conclusive presumption of §§ 18-2129 or 18-2142.01 applies, the "project shall be conclusively deemed to have been planned, located, and carried out in accordance with the purpose and provisions of" the Community Development Law.[61] This presumption necessarily encompasses an authority's compliance with the public hearing and notice provisions of the Community Development Law and prompts the question whether the public meeting requirements under NOMA, and in particular the provisions under § 84-1414 for declaring void a resolution made or formal action taken by a public body in violation of NOMA, are inconsistent with the conclusive presumption under the Community Development Law.

This case, however, does not require that we resolve any possible tension between the Community Development Law and NOMA. That is because, as we explain below, no NOMA violation has been proved.

An appellate court reviews actions for relief under NOMA in equity because the relief sought is in the nature of a declaration that action taken in violation of the act is void or voidable.[62] On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court.[63] But when credible evidence is in conflict on material issues

---

[60] § 18-2144.

[61] § 18-2129. Accord § 18-2142.01(1) and (2).

[62] *Schauer, supra* note 9.

[63] *Id.*

of fact, we consider and may give weight to the fact the trial court observed the witnesses and accepted one version of the facts over another.[64]

Salem Grain alleged that two events—the August 15, 2012, dinner and the November 9 email communications—were "meetings" of the Authority for purposes of NOMA. And Salem Grain argued that because NOMA requirements were not followed with respect to such meetings, any action taken by the Authority was invalidated pursuant to § 84-1414. The Authority denied that either event was a meeting governed by NOMA, and the district court agreed. After a de novo review of the record, so do we.

### (i) Dinner

NOMA defines a "[m]eeting" as "all regular, special, or called meetings, formal or informal, of any public body for the purposes of briefing, discussion of public business, formation of tentative policy, or the taking of any action of the public body."[65] NOMA also provides, however, that it

> does not apply to chance meetings or to attendance at or travel to conventions or workshops of members of a public body at which there is no meeting of the body then intentionally convened, if there is no vote or other action taken regarding any matter over which the public body has supervision, control, jurisdiction, or advisory power.[66]

In *Schauer v. Grooms*,[67] parties seeking to challenge the annexation of land for a redevelopment project involving an ethanol plant claimed that a dinner and walking tour of another ethanol facility constituted a public meeting of the city council under NOMA. The dinner and tour were hosted by the

---

[64] *Id.*

[65] § 84-1409(2).

[66] § 84-1410(5).

[67] *Schauer, supra* note 9.

economic redevelopment board and attended by the mayor, three members of the city council, and approximately 40 other people. The city council members testified that during the dinner, they "did not discuss or receive information associated with the redevelopment plan and contract" and did not "take any formal action on behalf of the city council."[68] We found the plaintiffs had not presented any evidence the dinner was "'for the purposes of briefing, discussion of public business, formation of tentative policy, or the taking of any action of the public body'"[69] and thus found no violation of NOMA.

Here, witnesses testified that Consolidated Grain gave a presentation during the dinner, but no witness could recall specifics about the content of that presentation. The quorum of Authority members who attended the dinner testified that no business was discussed and that they did not rely on any information from the dinner to support their subsequent decisions during public meetings to approve the redevelopment project.

On this record, we agree there is insufficient evidence that the dinner involved any "briefing, discussion of public business, formation of tentative policy, or the taking of any action"[70] by the Authority. The dinner did not constitute a meeting under NOMA.

### (ii) Email

For similar reasons, we agree with the district court that the email communications were not a "[m]eeting" as defined in § 84-1409(2), as there was no purpose to hold a briefing session, discuss public business, form tentative policy, or take any action of the public body. To the contrary, the record shows the purpose of the email communications was to let Authority members know Salem Grain had filed suit and advise that

---

[68] *Id*. at 447, 786 N.W.2d at 926.

[69] *Id.*, quoting § 84-1409(2).

[70] § 84-1409(2).

the previously approved contract was being amended to disclose the litigation and to include additional indemnification language recommended by counsel. The chairman was not seeking permission to take these actions, because the Authority already had authorized him to "take any and all actions, and to execute any and all documents," deemed necessary to conclude the transaction.

Section 84-1410(4) provides in part, "No closed session, informal meeting, chance meeting, social gathering, email, fax, or other electronic communication shall be used for the purpose of circumventing the requirements of the act." Salem Grain argues the emails were used by the Authority to circumvent the requirements of NOMA. But the chairman's email stated that if any member wanted to "discuss and/or act upon these matters," the chairman would "schedule a special meeting for that purpose."

Properly understood, the chairman's email demonstrates it was sent not to circumvent the requirements of NOMA, but, rather, to adhere to them. The district court did not err in finding no NOMA violation with respect to the emails.

## 4. Evidence of Additional
### NOMA Violations

[14-16] Lastly, Salem Grain assigns error to the district court's exclusion of certain evidence offered at trial and objected to as irrelevant. In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by these rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.[71] The exercise of judicial discretion is implicit in determining the relevance of evidence, and we will not reverse a trial court's decision regarding relevance absent an abuse of discretion.[72] A judicial abuse of discretion exists when

---

[71] *Arens v. NEBCO, Inc.*, 291 Neb. 834, 870 N.W.2d 1 (2015).

[72] *Id.*

the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[73]

[17] The evidence excluded by the trial court pertained to NOMA violations which had not been alleged in the operative amended complaint. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.[74]

The NOMA violations alleged in Salem Grain's amended complaint focused exclusively on the August 15, 2012, dinner and the November 9 email exchange. Because only those two alleged NOMA violations were at issue, and because the proffered evidence of other possible NOMA violations had no tendency to make any fact of consequence to those two violations any more or less probable, the evidence had no relevance and the trial court did not abuse its discretion in excluding it.

## V. CONCLUSION

The conclusive presumptions of §§ 18-2129 and 18-2142.01 present a formidable hurdle to those seeking to challenge the validity or enforceability of a redevelopment contract or bond under the Community Development Law. We find that all of Salem Grain's claims challenging the procedure by which the redevelopment project was adopted and the validity and enforceability of the redevelopment agreement and bond are conclusively foreclosed by §§ 18-2129 and 18-2142.01. And after a de novo review of the NOMA claims, we agree with the district court that no open meeting violation occurred. Finding all of Salem Grain's assignments of error to be without merit, we affirm the judgment of the district court.

Affirmed.

---

[73] *Id.*

[74] *Id.*