Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/14/2018 09:12 AM CST

STATE OF NEBRASKA, APPELLEE, V.
CHARLES M. McGUIRE, APPELLANT.
___ N.W.2d ___

Filed December 14, 2018.    No. S-17-1181.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.

2. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.

3. **Search and Seizure: Appeal and Error.** The denial of a motion for return of seized property is reviewed for an abuse of discretion.

4. **Sentences.** An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result.

5. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

6. ____: ____. When a trial court lacks jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.

7. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

8. **Statutes: Legislature: Intent.** Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.

9. ____: ____: ____. In order for a court to inquire into a statute's legislative history, that statute in question must be open to construction, and a

statute is open to construction when its terms require interpretation or may reasonably be considered ambiguous.

10. **Courts: Jurisdiction: Search and Seizure: Property.** The court in which a criminal charge was filed has exclusive jurisdiction to determine the rights to seized property, and the property's disposition.

11. **Search and Seizure: Property: Proof.** Seizure of property from someone is prima facie evidence of that person's right to possession of the property, and unless another party presents evidence of superior title, the person from whom the property was taken need not present additional evidence of ownership.

Appeal from the District Court for Washington County: John E. Samson, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Michael J. Tasset, of Johnson & Mock, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## INTRODUCTION

Pursuant to a search warrant, law enforcement officers seized personal property from a residence occupied by several persons, including Charles M. McGuire. He eventually pled no contest to attempted possession of a controlled substance and later moved for return of some seized property. The district court partially denied his motion, and he appeals. The State disputes the district court's jurisdiction, upon which our jurisdiction depends. We conclude Neb. Rev. Stat. § 29-818 (Reissue 2016) granted exclusive jurisdiction to the district court to determine the property's disposition. Because the court's partial denial of McGuire's motion was apparently premised on an understandable, yet incorrect, reading of our case

law, we reverse that part of the court's order and remand the cause for further proceedings consistent with this opinion.

## BACKGROUND

### Prosecution and Motion for Return

In August 2015, law enforcement officers, including a criminal investigator with the Washington County sheriff's office, executed a warrant search of McGuire's home. They seized several items of personal property, including firearms and ammunition. The State charged McGuire with numerous offenses in the district court for Washington County, but the charges were ultimately reduced to a single count of attempted possession of a controlled substance, a Class I misdemeanor. The third amended information, to which McGuire pled no contest, did not include any allegation of an intent to manufacture, distribute, deliver, or dispense the substance—in effect, it alleged only attempted simple possession.

After sentencing, McGuire filed a motion in the district court for return of seized property. Claiming that Neb. Rev. Stat. § 29-820 (Reissue 2016) divested the district court of jurisdiction over disposition of the disputed items, the State moved to dismiss the motion. The district court conducted a hearing on both motions.

### Hearing on Motion for Return

Regarding the State's motion to dismiss, it argued that § 29-820 divested the court of jurisdiction to determine the disposition of firearms and ammunition used in the commission of crime. The State contended the firearms and ammunition should be destroyed by law enforcement because one of the weapons was allegedly used in a crime.

Regarding McGuire's motion for return of personal property, McGuire first testified that the allegations of his motion (which stated that he was the lawful and rightful owner of the property and that the property had not been used in the commission of a crime, was not contraband, and was no longer

required as evidence) were true. McGuire's counsel then stated that he had "nothing else." The State did not cross-examine McGuire.

In response to McGuire's testimony, the State adduced testimonial and documentary evidence. Notably, the State did not present any evidence regarding the other occupants of the residence. Other than one name appearing on the inventory from the search, the record is entirely silent regarding the identities of those persons and their interests, if any, in the seized property. Rather, the State's evidence seemed to be offered in support of three arguments regarding disposition of the property.

First, the criminal investigator testified that in his opinion, the firearms seized were used in the commission of drug manufacturing and selling. He specified, "we believed that they were manufacturing enhanced marijuana." The investigator explained that in his training and experience, drug dealers use firearms to protect "their assets for illegal activities." But when asked whether he had any reason to believe McGuire was manufacturing any sort of controlled substance, he responded, "No more than that I don't know that he wasn't." He also replied "[c]orrect" when asked, "You think [McGuire] might have been [manufacturing a controlled substance], but you don't know?"

Second, the State contended that McGuire was not the owner of three of the firearms, because his name was not the listed owner on the Bureau of Alcohol, Tobacco, Firearms and Explosives "eTrace" background checks. The investigator acknowledged that there was nothing about the guns making them illegal per se. He also admitted that subsequent private-party sales from the bureau's registered owner would not show up on an eTrace search. But there was no evidence connecting any of the three persons named in the eTrace evidence to the residence from which the items were seized and no indication that the State had made any effort to notify those persons of the property it was holding.

Third, during the State's case, McGuire adduced evidence regarding the locations within the house and garage where the items of property were located when they were seized. Exhibit 15 was an inventory made at the time of execution of the search warrant. It cataloged every item seized and where in the house it was found. Eight items were seized from the east bedroom occupied by McGuire. Four items were taken from the northwest bedroom. Four other items were taken from, respectively, the dining room, the kitchen, the basement stairway, and the attached garage. The investigator testified that McGuire lived with four or five roommates and that property was seized in common areas used by all roommates. But nothing else was presented regarding any of these roommates.

### DISTRICT COURT'S ORDER

After taking both motions under advisement, the court disposed of them in a single order. Without elaboration, the court denied the State's motion to dismiss. The court partially granted McGuire's motion for return of personal property. The court acknowledged a presumption that McGuire had an ownership interest in the property, but found McGuire did not have exclusive possession of the property seized outside his bedroom. Of the 16 items seized, the court ordered the return of the 8 items seized from the east bedroom. In effect, the order denied return of the other items, which were seized from the other locations.

McGuire filed a timely appeal, which we moved to our docket.[1]

### ASSIGNMENT OF ERROR

McGuire assigns that the district court erred by overruling in part McGuire's motion for return of personal property. On appeal, the State raises the same jurisdictional argument asserted below.

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Supp. 2017).

## STANDARD OF REVIEW

[1,2] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[2] Statutory interpretation presents a question of law.[3] An appellate court independently reviews questions of law decided by a lower court.[4]

[3,4] The denial of a motion for return of seized property is reviewed for an abuse of discretion.[5] An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result.[6]

## ANALYSIS

### Jurisdiction

[5] We must first consider the State's jurisdictional argument. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[7] So we begin by examining our jurisdiction.

[6] The State contends that the district court lacked jurisdiction of McGuire's motion and that consequently, this court also lacks jurisdiction. When a trial court lacks jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.[8] Thus,

---

[2] *Priesner v. Starry*, 300 Neb. 81, 912 N.W.2d 249 (2018).

[3] *In re Guardianship of Luis J.*, 300 Neb. 659, 915 N.W.2d 589 (2018).

[4] See *Synergy4 Enters. v. Pinnacle Bank*, 290 Neb. 241, 859 N.W.2d 552 (2015).

[5] *State v. Buttercase*, 296 Neb. 304, 893 N.W.2d 430 (2017).

[6] *Id*.

[7] *Guardian Tax Partners v. Skrupa Invest. Co.*, 295 Neb. 639, 889 N.W.2d 825 (2017).

[8] *In re Guardianship of S.T.*, 300 Neb. 72, 912 N.W.2d 262 (2018).

the existence of our jurisdiction depends upon whether the district court had jurisdiction.

The State argues that § 29-820 divested the district court of jurisdiction to dispose of firearms seized or held and that it did so by vesting sole authority over disposition of these items in the law enforcement agency holding them. McGuire responds that § 29-820 must be read together with § 29-818 and that doing so defeats the State's argument. We agree with McGuire's statutory argument.

[7,8] Two basic principles of statutory interpretation control. First, statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[9] Second, components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.[10]

[9] Ordinarily, we look no further than the text. In order for a court to inquire into a statute's legislative history, that statute in question must be open to construction, and a statute is open to construction when its terms require interpretation or may reasonably be considered ambiguous.[11] So we begin with the text of the two statutes.

Section 29-818 establishes the basic framework for dealing with seized property. It states:

> Except for animals as provided in section 28-1012.01, property seized under a search warrant or validly seized without a warrant shall be safely kept by the officer seizing the same, unless otherwise directed by the judge or magistrate, and shall be so kept so long as necessary for

---

[9] *Synergy4 Enters., supra* note 4.

[10] *Wisner v. Vandelay Investments*, 300 Neb. 825, 916 N.W.2d 698 (2018).

[11] *Cookson v. Ramge*, 299 Neb. 128, 907 N.W.2d 296 (2018).

the purpose of being produced as evidence in any trial. Property seized may not be taken from the officer having it in custody by replevin or other writ so long as it is or may be required as evidence in any trial, nor may it be so taken in any event where a complaint has been filed in connection with which the property was or may be used as evidence, and the court in which such complaint was filed shall have exclusive jurisdiction for disposition of the property or funds and to determine rights therein, including questions respecting the title, possession, control, and disposition thereof. This section shall not preempt, and shall not be construed to preempt, any ordinance of a city of the metropolitan or primary class.[12]

Several important principles follow from this statutory framework, including a jurisdictional precept. First, an officer seizing property pursuant to a warrant must safely keep the seized property, unless otherwise directed by a judge or magistrate. Second, the seized property is to be kept so long as necessary to make it available as evidence in any trial. Third, so long as the seized property may be required as evidence in a trial, it may not be taken from the officer by means of a writ of replevin. Fourth, where a complaint has been filed asserting a charge where the property was or may be used as evidence, a writ of replevin would not lie to take the property, even if the property was no longer required in evidence. And most important to the case before us, a court where a complaint has been filed and where seized property was or may be used as evidence has "exclusive jurisdiction for disposition of the property or funds and to determine rights therein, including questions respecting the title, possession, control, and disposition thereof."[13]

It is only in the light of these principles that § 29-820 authorizes law enforcement to dispose of certain property

---

[12] § 29-818.

[13] *Id.*

seized or held and no longer required as evidence. Two subsections are pertinent to this appeal—subsections (1)(e) and (1)(f). Section 29-820(1)(e) states, "[f]irearms, ammunition, explosives, bombs, and like devices which have been used in the commission of crime shall be destroyed[.]" Section 29-820(1)(f) allows law enforcement to return firearms to owners that "(i) have not been used in the commission of crime, (ii) have not been defaced or altered in any manner that violates any state or federal law, (iii) may have a lawful use and be lawfully possessed, and (iv) [were not seized in a domestic assault]."

The State reads the introductory language of § 29-820 to confer exclusive authority upon the law enforcement agency over the items covered by subsections (1)(e) and (1)(f). It relies upon language stating that "when property seized or held is no longer required as evidence, it shall be disposed of by the law enforcement agency on such showing as the law enforcement agency may deem adequate."[14]

But that language is conditioned. Section 29-820(1) begins this authorization stating, "Unless other disposition is specifically provided by law . . . ." Reading §§ 29-818 and 29-820 together, § 29-820 applies only where the exclusive jurisdiction of a court under § 29-818 has not been invoked. The State does not contend that no charge was brought against McGuire—undeniably, the State filed charges against McGuire in the district court.

[10] As we have said before, the court in which a criminal charge was filed has exclusive jurisdiction to determine the rights to seized property, and the property's disposition.[15] In the situation before us, the State filed charges in the district court against McGuire relating to the seized property. Therefore, that court had the exclusive jurisdiction to determine the rights to and disposition of the seized property. Because it did not

---

[14] § 29-820(1).

[15] *State v. Agee*, 274 Neb. 445, 741 N.W.2d 161 (2007).

lack jurisdiction, neither do we. This disposes of the State's jurisdictional argument.

McGuire also argues that the State's interpretation would "endorse[] an obviously unconstitutional system whereby the citizens it represents may be summarily deprived of their valuable property by unreviewable executive action."[16] Even when a law is constitutionally suspect, a court will attempt to interpret it in a manner such that it is consistent with the constitution.[17] Here, we need not resort to this rule of construction.

Although we do not rely upon the legislative history, we summarize it for interested readers. The Nebraska Legislature added §§ 29-818 and 29-820 in 1963,[18] in reaction to the then-recent U.S. Supreme Court decision in *Mapp v. Ohio*.[19] When first enacted, these sections empowered only a court to dispose of seized or held property.[20] The Legislature amended these statutes several times, but the most significant amendments occurred in 1986 and 2012 to § 29-820. In the 1986 amendment to § 29-820, the Legislature supplemented the courts' authority by authorizing law enforcement agencies to dispose of stolen property, unlawful gambling money, unclaimed property, contraband, firearms, ammunition, explosives, and like devices used in the commission of crime.[21] The intent of the amendment was to "allow the court, if they wish to give a court order, but at the same time . . . allow [law enforcement] to use a common sense approach

---

[16] Reply brief for appellant at 1.

[17] *Schumacher v. Johanns*, 272 Neb. 346, 722 N.W.2d 37 (2006).

[18] 1963 Neb. Laws, ch. 161, §§ 7 and 9, pp. 573-74.

[19] *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). See Committee Statement, L.B. 276, Committee on Judiciary, 73d Sess. Leg. (Feb. 28, 1963).

[20] See §§ 29-818 and 29-820 (Reissue 1964).

[21] 1986 Neb. Laws, L.B. 543.

along with the bill to give people's property back to them as quickly as possible."[22] In the 2012 amendment to § 29-820, the Legislature enhanced this authority to return firearms that were voluntarily surrendered, safekept, or not used in the commission of crime.[23] The introducer explained, "When criminal charges are filed, the court decides what happens to the guns. But if no charges are filed or even considered, there is inconsistency in how law enforcement agencies throughout the state apply [§ 29-820]."[24] During the floor debate, the introducer reiterated this purpose.[25] But, as we have said, the plain language is clear. So, we turn to McGuire's quarrel with the court's order.

RETURN OF SEIZED PROPERTY

McGuire argues that the district court erred in partially denying his motion for return of property. Specifically, he contends that where no evidence was presented by the State to rebut his presumption of ownership, the court erred in finding he did not have exclusive possession of all the property.

We note that on appeal, the State has apparently acquiesced in the district court's implicit rejection of two arguments below—that the seized property was used in the commission of a crime and that the eTrace evidence established superior title in another person. In this court, the State does not rely upon either of those arguments. Rather, the State argues only that because the residence was occupied by several people and some items were found outside of McGuire's bedroom, he "was not in exclusive possession of the [unsuccessfully

---

[22] Judiciary Committee Hearing, L.B. 543, 89th Leg., 2d Sess. 31 (Feb. 4, 1985).

[23] Floor Debate, L.B. 807, 102d Leg., 2d Sess. 56-57 (Apr. 5, 2012).

[24] Statement of Intent, L.B. 538, Committee on Judiciary, 102d Leg. 1st Sess. (Feb. 16, 2011). See, also, Judiciary Committee Hearing, L.B. 538, 102d Leg., 1st Sess. 1-2 (Feb. 16, 2011).

[25] Floor Debate, L.B. 807, *supra* note 23.

sought] items and thus was not entitled to a presumption of ownership."[26]

Nor does the State argue on appeal that any of the items sought were contraband, subject to forfeiture, or of any continuing interest to the State. Accordingly, we focus only on the district court's reasoning, which the State supports on appeal—that because some of the items were taken from locations where other residents had access to them, McGuire was not entitled to their return.

Both parties argue principles deriving from our seminal decision in *State v. Agee*.[27] We begin by quoting from *Agee* at some length:

> [T]he general rule is well established that upon the termination of criminal proceedings, seized property, other than contraband, should be returned to the rightful owner unless the government has a continuing interest in the property. . . . While the government is permitted to seize evidence for use in investigation and trial, such property must be returned once criminal proceedings have concluded, unless it is contraband or subject to forfeiture. . . . Thus, a motion for the return of property is properly denied only if the claimant is not entitled to lawful possession of the property, the property is contraband or subject to forfeiture, or the government has some other continuing interest in the property.
>
> . . . When criminal proceedings have terminated, the person from whom property was seized is presumed to have a right to its return, and the burden is on the government to show that it has a legitimate reason to retain the property. *It is long established that a presumption of ownership is created by exclusive possession of personal property and that evidence must be offered to overcome that presumption.* One in possession of property has the

---

[26] Brief for appellee at 12.

[27] *Agee, supra* note 15.

right to keep it against all but those with better title, and the "mere fact of seizure" does not require that "entitlement be established anew." Seizure of property from someone is prima facie evidence of that person's right to possession of the property, and unless another party presents evidence of superior title, the person from whom the property was taken need not present additional evidence of ownership.[28]

Obviously, in all but one instance, we spoke of a party "in possession" or one "from whom the property was taken," or similar wording.[29] In only one instance did we refer to "exclusive possession."[30] Here, we have evidence that several persons occupied this residence. We also have evidence that McGuire occupied the east bedroom. From this evidence, the district court could reasonably infer that other persons shared access to the locations outside the east bedroom. And the court apparently reasoned that because of that inference, McGuire's possession was not "exclusive."

Thus, the question becomes whether this inference was sufficient to prevent the presumption of ownership from arising or, if the presumption arose, whether the inference was sufficient to rebut the presumption. Neither party cites any particularly helpful authority. And surprisingly, we have found very little authority on this question. Of course, we recognize that the State reads the decision of the Nebraska Court of Appeals in *State v. Dubray*[31] to require a showing of exclusive possession before a presumption of ownership arises regarding seized property. But that court relied upon our language in *Agee*. And as our quotation from the *Agee* opinion shows, we did not speak with perfect clarity. Indeed,

---

[28] *Id.* at 449-51, 741 N.W.2d at 166-67 (emphasis supplied).

[29] See *id.* at 450-51, 741 N.W.2d at 166.

[30] See *id.* at 450, 741 N.W.2d at 166.

[31] *State v. Dubray*, 24 Neb. App. 67, 883 N.W.2d 399 (2016).

even the cases we cited in *Agee* for that particular sentence provide little help.

None of the cases we cited for the "exclusive possession" principle arose in the context of returning seized property. The principal case cited was *In re Estate of Severns*.[32] But that case involved a grandfather's clock which had been in the decedent's sole possession for nearly 28 years. This provides no help. *In re Estate of Severns*, in turn, cited two decisions. In one ancient decision, two parties disputed possession of a red cow, the plaintiff claiming by purchase from a married woman and the defendant pursuant to a chattel mortgage from the woman's husband.[33] Several witnesses testified that when the mortgage was given, the cow belonged to the married woman. There was no evidence that the husband ever had title. Consequently, we affirmed a judgment for the plaintiff. The other decision underlying *In re Estate of Severns* involved replevin of an automobile.[34] A creditor under a conditional sales contract sued to recover the automobile from the borrower/buyer. Later, the buyer obtained a replacement motor from others, who retained possession because they had not been paid. This court determined that the motor suppliers were not in exclusive possession and had constructive notice of the creditor's right to possession. Consequently, their claim to possession failed. Neither of the cases cited in *In re Estate of Severns* assists us here.

More helpful is another case we cited in *Agee*, where a defendant convicted of burglary but acquitted of larceny allegedly committed during the burglary sought return of jewelry seized from him when he was arrested.[35] There, the government had satisfied itself that the jewelry was not taken from the burglary or a nearby similar event involving the defendant, but

---

[32] *In re Estate of Severns*, 217 Neb. 803, 352 N.W.2d 865 (1984).

[33] *Booknau v. Clark*, 58 Neb. 610, 79 N.W. 159 (1899).

[34] *Allied Inv. Co. v. Shaneyfelt*, 161 Neb. 840, 74 N.W.2d 723 (1956).

[35] *Government of Virgin Islands v. Edwards*, 903 F.2d 267 (3d Cir. 1990).

it still resisted returning the jewelry. The court stated that the government had had "ample opportunity to locate any persons who contend that they are the rightful owners" and that the government was "still unable to posit anyone, other than [the defendant], to whom the property belonged."[36] The appellate court reversed the order denying the motion and instructed the trial court to order the government to return the property. At the time of arrest, the defendant had "tried to give the jewelry to his girlfriend,"[37] but the appellate court did not consider that significant. Thus, the girlfriend's potential claim to the property did not justify the government in retaining it. Although the defendant's possession may not have been exclusive of his girlfriend, he was entitled to return of the property.

From the cases addressing return of seized property, a common theme emerges—when the government's interests have ended, it must return the property. The "whole thrust" is that "when property is seized from a person, the court must return it to that person."[38] A court is "obligated to restore the *status quo ante*."[39] Lawful seizure of property may affect the timing of return, but never the owner's right to eventual return.[40] The government may not keep seized property purely for the sake of keeping it or because it is hopeful it may be relevant to some future investigation.[41] "Unless there are serious reasons (presented by the government or adverse claimants) to doubt a person's right to the property seized from him, he need not come forward with additional evidence of ownership" and "the court must return [the property] to that person when it is no longer needed by the government."[42]

---

[36] *Id*. at 274.

[37] *Id.* at 272.

[38] *United States v. Wright*, 610 F.2d 930, 939 (D.C. Cir. 1979).

[39] *Id.*

[40] *State v. Card*, 48 Wash. App. 781, 741 P.2d 65 (1987).

[41] *DeLoge v. State*, 156 P.3d 1004 (Wyo. 2007).

[42] *United States v. Wright, supra* note 36, 610 F.2d at 939.

Recalling our extended quotation above from our *Agee* opinion, we believe that inserting the property law principle regarding "exclusive possession" led to the confusion here.[43] McGuire's initial showing certainly made no reference to any roommates. So, clearly, at that point, there was nothing from which the court could draw any inference adverse to McGuire.

[11] Thus, the burden shifted to the State. "'The burden on the government is heavy because there is a presumption that the person from whom the property was taken has a right to its return.'"[44] As we ultimately said in *Agee*, seizure of property from someone is prima facie evidence of that person's right to possession of the property, and unless another party presents evidence of superior title, the person from whom the property was taken need not present additional evidence of ownership.[45] The State does not argue that McGuire was not a person from whom the property was seized.

If the State had a serious concern that one or more of McGuire's roommates had superior title to the property, it failed to make any such concern apparent in our record. It seems inconceivable that the State's investigation in connection with execution of the search warrant did not uncover the names of McGuire's roommates. But the State presented no evidence of their names or of any claims of ownership on their behalf. The record contains no indication that the State made any effort to notify any of them of McGuire's motion. The State's concerns were directed elsewhere.

But most important, the burden on the State was not merely to raise the possibility of other claimants; it was required to establish that another party had superior title to the property. It failed to meet that burden.

---

[43] *State v. Agee, supra* note 15, 274 Neb. at 450, 741 N.W.2d at 166.

[44] *DeLoge v. State, supra* note 41, 156 P.3d at 1011 (quoting *U.S. v. Albinson*, 356 F.3d 278 (3d Cir. 2004)).

[45] *State v. Agee, supra* note 15.

The confusion below may have flowed from an incorrect, but understandable, reading of *Agee*. To the extent that the court's ruling was based upon an incorrect understanding of the law, it is not possible for us to review it for an abuse of discretion.[46] Therefore, we have crafted a disposition to enable the parties to conclude the proceeding utilizing a correct legal framework. Our aim is to return the proceedings to the point at which the incorrect understanding introduced error. McGuire made a sufficient showing to establish a presumption of ownership. The State failed to establish that the seized property is contraband or subject to forfeiture, or that the State has some other continuing interest in the property. Thus, on remand, the issue will be limited to any claim of superior title which may be asserted by the State on behalf of any of McGuire's roommates or by any other third-party claimant adverse to McGuire.

## CONCLUSION

The State filed charges in the district court against McGuire relating to the seized property. Therefore, that court had the exclusive jurisdiction to determine the rights to and disposition of the seized property. Because the district court had jurisdiction of McGuire's motion, we have jurisdiction of this appeal.

The portion of the district court's order requiring the State to return items to McGuire is affirmed. The portion of the order denying return of other items is reversed, and the cause is remanded for further proceedings consistent with this opinion. In carrying out our mandate, the district court may permit the record to be opened for additional evidence on the limited issue set forth above. If additional evidence is allowed, those claiming superior title adverse to McGuire shall have the burden of first going forward and McGuire shall be entitled to offer evidence in rebuttal.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

---

[46] See *State v. Myers, ante* p. 756, ___ N.W.2d ___ (2018).