Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/16/2022 08:05 AM CST

Robert J. Heist II, appellant, v. Nebraska
Department of Correctional
Services et al., appellees.
___ N.W.2d ___

Filed September 23, 2022.    No. S-20-813.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.

3. **Immunity: Jurisdiction.** Sovereign immunity is jurisdictional in nature, and courts have a duty to determine whether they have subject matter jurisdiction over a matter.

4. **Jurisdiction: Statutes.** Subject matter jurisdiction and statutory interpretation present questions of law.

5. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.

6. **Judgments: Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent from the lower court's decision.

7. **Sentences: Statutes: Time.** The good time law to be applied to a defendant's sentence is the law in effect at the time the defendant's sentence becomes final.

8. **Jurisdiction: Appeal and Error.** Where a lower court lacks subject matter jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.

9. **Administrative Law: Immunity: Waiver: Jurisdiction: Declaratory Judgments.** The Administrative Procedure Act provides a limited statutory waiver of the State's sovereign immunity and confers subject matter jurisdiction for a declaratory judgment action seeking a determination regarding the validity of a state agency's rule or regulation.

10. **Administrative Law: Words and Phrases.** The Administrative Procedure Act defines a "rule or regulation" as any standard of general application adopted by an agency in accordance with the authority conferred by statute.

11. **Administrative law.** Under the Administrative Procedure Act, a rule or regulation shall not include internal procedural documents which provide guidance to staff on agency organization and operations, lacking the force of law, and not relied upon to bind the public.

12. **Administrative Law: Jurisdiction: Declaratory Judgments: Statutes.** The Administrative Procedure Act does not confer jurisdiction for declaratory relief concerning judicial interpretation of a statute.

13. **Declaratory Judgments: Immunity: Waiver.** Nebraska's Uniform Declaratory Judgments Act does not waive the State's sovereign immunity.

14. **Declaratory Judgments: Public Officers and Employees: Immunity.** A declaratory judgment action against a state officer or agent seeking relief from an invalid act or an abuse of authority by an officer or agent is not a suit against the State and is therefore not barred by the principles of sovereign immunity.

15. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

16. **Statutes: Legislature: Intent.** Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.

17. **____: ____: ____.** In order for a court to inquire into a statute's legislative history, that statute in question must be open to construction, and a statute is open to construction when its terms require interpretation or may reasonably be considered ambiguous.

18. **Statutes.** The statutory canon of expressio unius est exclusio alterius recognizes that an expressed object of a statute's operation excludes the statute's operation on all other objects unmentioned by the statute.

19. **Sentences.** Where a mandatory minimum sentence is involved, an inmate's parole eligibility date is calculated by subtracting the mandatory minimum sentence from the court's minimum sentence, halving the difference, and adding that difference to the mandatory minimum.

20. **Statutes: Legislature: Presumptions: Intent.** In construing a statute, it is presumed that the Legislature intended a sensible, rather than an absurd, result.

21. **Statutes.** Under the absurd results doctrine, a court may deviate from the plain language of the statutory text if application of the plain language would lead to manifest absurdity.

22. ____. The absurd results doctrine does not include substantive errors arising from a drafter's failure to appreciate the effect of certain statutory provisions.

Appeal from the District Court for Lancaster County: John A. Colborn, Judge. Affirmed.

Robert J. Heist II, pro se.

Douglas J. Peterson, Attorney General, and Scott R. Straus for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ., and Steinke, District Judge.

Funke, J.

## I. INTRODUCTION

Robert J. Heist II, an inmate in the Nebraska Department of Correctional Services (DCS) system, appeals the dismissal of his petition for declaratory judgment under the Administrative Procedure Act (APA) and Nebraska's Uniform Declaratory Judgments Act (UDJA). Heist argues that good time credit earned pursuant to Neb. Rev. Stat. § 83-1,107(2)(b) (Cum. Supp. 2020) applies to an inmate's parole eligibility date (PED). In affirming the decision of the district court, we conclude that good time earned pursuant to § 83-1,107(2)(b) is applicable only to reduce an inmate's maximum sentence and, accordingly, has no applicability to an inmate's PED.

## II. BACKGROUND

### 1. Factual Background

On April 4, 2016, Heist was sentenced to imprisonment for a minimum of 11 years (with a mandatory minimum of 3 years) and a maximum of 25 years in the DCS system for child enticement. According to DCS records, Heist's PED is March 30, 2023, and DCS' brief on appeal gives his tentative release date (TRD) as February 10, 2030.

Since his incarceration, Heist has been earning good time credit under § 83-1,107. It is undisputed that the reductions of Heist's sentence under § 83-1,107 have been, and continue to be, deducted from the maximum term of his sentence to calculate the date when discharge from state custody becomes mandatory. It further appears that, currently, no reductions have been applied to Heist's minimum sentence, mandatory minimum sentence, or PED.

### 2. DCS Policy 104.08

DCS has adopted "Policy 104.08," which is titled "Inmate Time Calculations and Sentencing." The stated purpose of DCS' Policy 104.08 is to "outlin[e] methodology for calculating inmate's sentences." As to procedures for inmate time computations, Policy 104.08 notes that there are seven separate Nebraska laws that govern the release of all inmates committed to DCS and explains that "[t]hese statutes, along with the opinions of Nebraska courts and the state Attorney General's office, form the basis of all time calculations." The first Nebraska law identified is 2011 Neb. Laws, L.B. 191, which Policy 104.08 describes as follows:

> A. Effective March 16, 2011, LB 191 amended sections 83-1,107 and 83-1,108
>
> 1. LB 191 added an opportunity [for a committed offender] to earn additional good time based on institutional behavior. [DCS] will reduce the term of a committed inmate by three days on the first day of each month, following a 12-month period of incarceration within

[DCS], during which the inmate has not been found guilty of a Class I or Class II offense, or more than three Class III offenses under [DCS'] disciplinary code. Reductions earned pursuant to LB 191 shall not be subject to forfeit or withholding by [DCS].

### 3. Procedural Facts

Heist filed a petition against DCS, Scott Frakes in his official capacity as DCS director, Mickie Baum in her official capacity as DCS records administrator, and Candace Bottorf in her official capacity as DCS agency legal counsel (hereinafter collectively DCS) for declaratory judgment under the APA and the UDJA. Heist alleged that Policy 104.08 improperly withholds L.B. 191 good time from PEDs. He also argued that Policy 104.08 is a rule or regulation for purposes of the APA and is not authorized by the language of § 83-1,107 and Neb. Rev. Stat. § 83-1,110 (Reissue 2014). DCS filed a motion to dismiss which, by agreement and notice to both parties, was converted to a motion for summary judgment. Heist subsequently filed a cross-motion for summary judgment.

In October 2020, the district court entered an order sustaining DCS' motion, overruling Heist's motion, and dismissing Heist's complaint. The court concluded that it lacked jurisdiction over Heist's APA claim, because Policy 104.08 was not a rule or regulation as defined by Neb. Rev. Stat. § 84-901 (Cum. Supp. 2020) and the State did not waive its sovereign immunity. The court further concluded that DCS was entitled to summary judgment on the UDJA claim, because Policy 104.08 accurately outlines how sentences are to be calculated pursuant to Nebraska law and Heist's PED was correctly calculated. Heist appeals.

Heist filed a petition to bypass review by the Nebraska Court of Appeals, asserting the case involves an issue of first impression in Nebraska. We granted the petition to bypass and moved the case to our docket.

## III. ASSIGNMENTS OF ERROR

Heist assigns, restated and consolidated, that the district court erred in (1) finding that DCS Policy 104.08 is an internal procedural document and thus concluding that it lacked subject matter jurisdiction over his APA claim; (2) granting summary judgment in favor of DCS on his UDJA claim, when Nebraska law requires application of good time credit earned under § 83-1,107(2)(b) to PEDs; and (3) finding that 62 inmates having a PED after their respective TRD, which is colloquially referred to as an "inverted sentence," is not so absurd that the Legislature could not have intended § 83-1,107 to be interpreted as applying only to the maximum sentence.

## IV. STANDARD OF REVIEW

[1,2] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[1] An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.[2]

[3-5] Sovereign immunity is jurisdictional in nature, and courts have a duty to determine whether they have subject matter jurisdiction over a matter.[3] Subject matter jurisdiction and statutory interpretation present questions of law.[4] An appellate court independently reviews questions of law decided by a lower court.[5]

[6] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of

---

[1] *Lassalle v. State*, 307 Neb. 221, 948 N.W.2d 725 (2020).

[2] *Id.*

[3] *Burke v. Board of Trustees*, 302 Neb. 494, 924 N.W.2d 304 (2019).

[4] *In re Estate of Brinkman*, 308 Neb. 117, 953 N.W.2d 1 (2021).

[5] *Id.*

law, which requires the appellate court to reach a conclusion independent from the lower court's decision.[6]

## V. ANALYSIS

[7] As an initial matter, we note that the good time law to be applied to a defendant's sentence is the law in effect at the time the defendant's sentence becomes final.[7] Because Heist was sentenced in 2016, L.B. 191 is the applicable law governing his sentence. Prior to the enactment of L.B. 191, § 83-1,107 reduced an inmate's sentence by 6 months for each year of the inmate's term. L.B. 191 amended § 83-1,107 to allow an inmate to earn additional good time at the rate of 3 days per month after completion of 1 year of incarceration so long as the offender did not commit certain offenses under DCS' disciplinary code. Section 83-1,107(2) now reads as follows:

(a) [DCS] shall reduce the term of a committed offender by six months for each year of the offender's term and pro rata for any part thereof which is less than a year.

(b) In addition to reductions granted in subdivision (2)(a) of this section, [DCS] shall reduce the term of a committed offender by three days on the first day of each month following a twelve-month period of incarceration within [DCS] during which the offender has not been found guilty of (i) a Class I or Class II offense or (ii) more than three Class III offenses under [DCS'] disciplinary code. Reductions earned under this subdivision shall not be subject to forfeit or withholding by [DCS].

(c) The total reductions under this subsection shall be credited from the date of sentence, which shall include any term of confinement prior to sentence and commitment as provided pursuant to section 83-1,106, and shall be deducted from the maximum term, to determine the date when discharge from the custody of the state becomes mandatory.

---

[6] *US Ecology v. State*, 258 Neb. 10, 601 N.W.2d 775 (1999).

[7] *State v. Nollen*, 296 Neb. 94, 892 N.W.2d 81 (2017).

L.B. 191 also amended Neb. Rev. Stat. § 83-1,108 (Reissue 2014) to require that the Board of Parole reduce a parolee's parole term for good conduct while under parole by 10 days for each month. Such reduction shall be deducted from the maximum term, less good time granted pursuant to § 83-1,107, to determine the date when discharge from parole becomes mandatory.

As briefly discussed above, DCS inmates may accrue two different good time credits under § 83-1,107. However, the central issue in this case involves good time credits earned pursuant to § 83-1,107(2)(b). As such, we decline to discuss the implications of good time credits earned pursuant to § 83-1,107(2)(a).

### 1. APA Claim

[8] Before reaching the legal import of § 83-1,107(2)(b) and Policy 104.08, it is our duty to determine whether we have jurisdiction over this matter.[8] Where a lower court lacks subject matter jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.[9]

Heist argues that the district court erred in determining that Policy 104.08 is not a rule or regulation and, thus, also in determining that it lacked jurisdiction to adjudicate whether the policy exceeds DCS' statutory authority. Specifically, Heist maintains Policy 104.08 is a rule or regulation because it prescribes penalties, affects private rights, and sets its own standards for calculating good time. He also maintains it has the force of law, as shown by DCS' "[p]ast practice" in releasing approximately 300 inmates prematurely.[10] DCS disagrees, arguing that Policy 104.08 is an internal procedural document

---

[8] See *Butler Cty. Landfill v. Butler Cty. Bd. of Supervisors*, 299 Neb. 422, 908 N.W.2d 661 (2018).

[9] *Id.*

[10] Brief for appellant at 11.

that repeats the relevant statutory language about calculating inmate sentences "nearly verbatim," rather than sets its own standards.[11] DCS also asserts that any past misapplication of good time does not establish the policy has the force of law.

We find no error in the district court's determination that Policy 104.08 is not a rule or regulation and hold that we, like the district court, lack subject matter jurisdiction to consider Heist's APA claims.

[9-11] This court has repeatedly recognized that under Neb. Rev. Stat. § 84-911 (Reissue 2014), the APA provides a limited statutory waiver of the State's sovereign immunity and confers subject matter jurisdiction for a declaratory judgment action seeking a determination regarding the validity of a state agency's rule or regulation.[12] This waiver applies only to a "rule or regulation," which the APA defines to mean "any standard of general application adopted by an agency in accordance with the authority conferred by statute."[13] The APA further provides that the term "rule or regulation" shall not include "internal procedural documents which provide guidance to staff on agency organization and operations, lacking the force of law, and not relied upon to bind the public."[14] However, it also provides that "every standard which prescribes a penalty shall be presumed to have general applicability and any standard affecting private rights, private interests, or procedures available to the public is presumed to be relied upon to bind the public."[15]

Specifically, Heist asserts that language in sections I.B.3, I.D.3, I.E.3, I.F.5, I.G.3, and I.H.5 of Policy 104.08, calling for good time reductions to be forfeited or withheld for misconduct, prescribes penalties, and as such, he maintains that Policy 104.08 is a rule or regulation. He similarly maintains that

---

[11] Brief for appellees at 11.

[12] See *Engler v. State*, 283 Neb. 985, 814 N.W.2d 387 (2012).

[13] § 84-901(2).

[14] *Id.*

[15] *Id.*

language in sections I.A.1, I.F.6, I.G.3, and I.H.5, regarding how good time can be earned and how lost good time can be restored, affects private rights and, as such, means that Policy 104.08 must be a rule or regulation and cannot be an internal procedural document.

Of the various sections of Policy 104.08 cited by Heist, however, only section I.A.1 involves L.B. 191 good time. The other sections pertain to good time under earlier statutes whose application Heist does not challenge. As such, we focus our discussion on section I.A.1.

Section I.A.1 essentially restates § 83-1,107(2)(b) when it calls for inmates' terms to be reduced by 3 days on the first day of each month, following a 12-month period of incarceration within DCS, during which the inmate has not been found guilty of a Class I or II offense, or more than three Class III offenses, under DCS' disciplinary code, and provides that any such good time shall not be subject to forfeiture or withholding by DCS. The only differences between the policy here and the statute are immaterial; for example, section I.A.1 uses "NDCS" and "will," while the statute uses "the department" and "shall." Aside from these minute differences, DCS neither added anything to nor removed anything from the statutory language when restating it in the policy. As such, the purported penalties and provisions affecting private rights that Heist points to do not mean that Policy 104.08 is a rule or regulation. In fact, to the contrary, they indicate that Policy 104.08 is a prototypical internal procedural document insofar as it provides guidance to staff by summarizing the seven statutes relevant to the release of all DCS inmates and explaining their effect.

[12] Allowing Heist to challenge Policy 104.08 under the APA simply because it restates statutory language that could be seen to prescribe penalties or affect private rights would negate our holding in *Perryman v. Nebraska Dept. of Corr. Servs.*[16]

---

[16] *Perryman v. Nebraska Dept. of Corr. Servs.*, 253 Neb. 66, 568 N.W.2d 241 (1997), *disapproved on other grounds, Johnson v. Clarke*, 258 Neb. 316, 603 N.W.2d 373 (1999).

The plaintiff in *Perryman* was an inmate whom DCS initially credited with good time when computing his PED and TRD, even though he was sentenced to a mandatory minimum term.[17] However, DCS later revoked these credits after the Nebraska Attorney General indicated that DCS' practice was contrary to the governing statute.[18] The plaintiff sued, seeking a judicial determination as to whether DCS could take this action based on the Attorney General's memorandum. However, the district court found it lacked jurisdiction under the APA, because "'the conflict is simply one of statutory interpretation.'"[19] We affirmed, noting that the memorandum "involve[d] a matter of statutory interpretation" and that § 84-911's limited waiver of sovereign immunity "does not confer jurisdiction for declaratory relief concerning judicial interpretation of a statute."[20]

Heist attempts to distinguish his case from *Perryman* by arguing that Policy 104.08 is not a memorandum, applies to all inmates, "does prescribe a penalty," and exceeds the DCS' statutory authority.[21] However, these arguments are unavailing. Nothing in the APA's definition of "rule or regulation" suggests that a document's denomination as a "policy" or "memorandum" is dispositive. The same is true as to whether the document affects all inmates or a subset of inmates. Moreover, as we have already noted, the policy merely restates good time calculations set forth in the statute; it does not prescribe a penalty. Further, the question of whether the policy exceeds DCS' statutory authority is an argument on the merits which cannot be reached under Heist's APA claim, because we lack subject matter jurisdiction. Thus, we agree with the district court and conclude that Policy 104.08 is not a rule or

---

[17] *Id.*

[18] *Id.*

[19] *Id.* at 69, 568 N.W.2d at 244.

[20] *Id.* at 70, 568 N.W.2d at 245.

[21] Brief for appellant at 12.

regulation, because it merely recites Nebraska statute. The limited waiver of sovereign immunity does not confer jurisdiction for declaratory relief concerning judicial interpretation of a statute. Accordingly, the district court correctly found that it lacked subject matter jurisdiction under the APA in Heist's petition against DCS, because the State did not waive its sovereign immunity.

## 2. UDJA Claim

Heist also argues that the district court erred in granting summary judgment in favor of DCS on his UDJA claim, because Nebraska law requires that good time credit earned under § 83-1,107(2)(b) apply to PEDs. DCS counters that the plain language of § 83-1,107(2)(c) clearly indicates that good time earned under § 83-1,107(2)(b) is only to be deducted from an inmate's maximum term to determine when discharge from state custody becomes mandatory.

[13,14] As an initial matter, we note that although the UDJA itself does not waive the State's sovereign immunity, a declaratory judgment action against a state officer or agent seeking relief from an invalid act or an abuse of authority by an officer or agent is not a suit against the State and is therefore not barred by the principles of sovereign immunity.[22] Heist's petition for declaratory relief named, in addition to DCS, Frakes, Baum, and Bottorf in their official capacities as respondents, and asserted that each was improperly "withholding the good time implemented by LB 191 . . . by applying LB 191 Good Time only to [TRDs] and not to [PEDs]." As such, like the district court, we have jurisdiction to consider the merits of Heist's UDJA claim, which he brought as an alternative to his APA claim. However, upon consideration of this claim, we find no error by the district court.

---

[22] See, *Logan v. Department of Corr. Servs.*, 254 Neb. 646, 578 N.W.2d 44 (1998); *County of Lancaster v. State*, 247 Neb. 723, 529 N.W.2d 791 (1995). See, also, *Burke, supra* note 3.

### (a) § 83-1,107

[15,16] In considering the parties' arguments concerning the interpretation of § 83-1,107, we apply our familiar principles of statutory interpretation, which we briefly review here. Two basic principles of statutory interpretation control.[23] First, statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[24] Second, components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.[25]

[17] Ordinarily, we look no further than the text.[26] In order for a court to inquire into a statute's legislative history, that statute in question must be open to construction, and a statute is open to construction when its terms require interpretation or may reasonably be considered ambiguous.[27]

Here, like the district court, we find that § 83-1,107 unambiguously provides that good time reductions are deducted from the maximum term. Subsection (2)(c) of § 83-1,107 specifically states:

> The total reductions under this subsection shall be credited from the date of sentence, which shall include any term of confinement prior to sentence and commitment as provided pursuant to section 83-1,106, and shall be deducted from the *maximum term*, to determine the date when discharge from the custody of the state becomes mandatory.

---

[23] *State v. McGuire*, 301 Neb. 895, 921 N.W.2d 77 (2018).

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

(Emphasis supplied.) Admittedly, subsection (2)(c) does not expressly state that good time shall *only* be deducted from the maximum term, and subsection (2)(b) uses the word "term"— rather than "maximum term"—when discussing how L.B. 191 good time may be accrued. However, contrary to Heist's suggestion, neither factor renders § 83-1,107 ambiguous.

Subsection (2)(c) of § 83-1,107 plainly states that the total reductions shall be deducted from the maximum term. It does not state reductions should be made from the minimum term or the mandatory minimum term, which is tantamount to saying that the reductions shall be from only the maximum term. Moreover, subsection (2)(c) expressly states that it applies to all "reductions under this subsection," including those under subsection (2)(b).

[18] The district court buttressed its conclusion regarding the plain meaning of § 83-1,107 by referencing the statutory canon of expressio unius est exclusio alterius, which recognizes that "an expressed object of a statute's operation excludes the statute's operation on all other objects unmentioned by the statute."[28] Specifically, it noted that § 83-1,107(2)(c)'s provisions for deductions from the maximum term necessarily excludes § 83-1,107(2)(b) from operating on an inmate's minimum term and, by extension, PED.

Heist maintains that this was erroneous and that the district court should instead have adopted his interpretation, based on the canon of in pari materia. He maintains that the district court's approach "creates conflict" between the various provisions of the Nebraska Treatment and Corrections Act, while his approach "harmonizes" them.[29]

The district court considered Heist's proposed interpretation based on in pari materia and properly rejected it. Heist's argument seems to be that because § 83-1,110(1) states that "[e]very committed offender shall be eligible for parole when

---

[28] *Pfizer v. Lancaster Cty. Bd. of Equal.*, 260 Neb. 265, 272, 616 N.W.2d 326, 335 (2000).

[29] Brief for appellant at 17.

the offender has served one-half the minimum term of his or her sentence as provided in sections 83-1,107 and 83-1,108," good time credit accrued under § 83-1,107(2)(b) must be considered when determining PEDs. Heist similarly maintains that not counting L.B. 191 good time toward PEDs "creates conflict" between §§ 83-1,107 and other provisions of the Nebraska Treatment and Corrections Act, specifically Neb. Rev. Stat. §§ 83-170(7) and 83-1,109 (Cum. Supp. 2020) and 83-1,110.

[19] Heist's arguments are unpersuasive. Section 83-170(7) merely defines "good time" as any reduction of a sentence granted pursuant to §§ 83-1,107 and 83-1,108 and makes no reference to an inmate's PED. Section 83-1,109 merely requires DCS to manage information relevant to parole eligibility, as well as good time credits, but makes no reference to how to calculate an inmate's PED.[30] Section 83-1,110 specifically provides that where a mandatory minimum sentence is involved, as is the case here, an inmate's PED is calculated by subtracting the mandatory minimum sentence from the court's minimum sentence, halving the difference, and adding that difference to the mandatory minimum.[31] Under these provisions, good time reductions taken under § 83-1,107(2)(b) would not affect an inmate's PED unless they can be applied to an inmate's minimum or mandatory minimum sentence, something which is not possible under the plain meaning of § 83-1,107(2)(c), as we have previously discussed. Thus, the language of § 83-1,107 can be adequately understood when considered in pari materia with other statutes in the Nebraska Treatment and Corrections Act. Further, although we do not find any conflict between §§ 83-1,107 and 83-1,110, we agree with the district court that even if conflict did exist, the specific language of § 83-1,107(2)(c) would control over the general language of § 83-1,110. To the extent conflict

---

[30] See, generally, *Gray v. Frakes*, 311 Neb. 409, 973 N.W.2d 166 (2022).

[31] *State v. Castillas*, 285 Neb. 174, 826 N.W.2d 255 (2013), *disapproved on other grounds, State v. Lantz*, 290 Neb. 757, 861 N.W.2d 728 (2015).

exists between two statutes, the specific statute controls over the general.[32]

Additionally, Heist directs us to Neb. Rev. Stat § 29-2204(6)(a) (Reissue 2016), which requires a court, when imposing an indeterminate sentence, to advise the offender of the time the offender will serve on his or her minimum term before attaining parole eligibility *and* the time the offender will serve on his or her maximum term before attaining mandatory release, assuming that no good time for which the offender will be eligible is lost. However, Heist's argument that this statute "assume[s] good time is used to calculate parole eligibility" is also unpersuasive.[33] Section 29-2204(6)(a) merely requires a court to give certain advisements to an offender when imposing an indeterminate sentence upon that offender; it neither states nor assumes that good time reductions are applicable to an inmate's minimum sentence. Thus, Heist's assignments of error regarding the interpretation of § 83-1,107 are without merit.

Additionally, we acknowledge that Heist urges this court to look at the legislative history of L.B. 191 to ascertain the Legislature's intent and that the district court did so. However, in order for a court to inquire into a statute's legislative history, that statute in question must be open to construction, and a statute is open to construction when its terms require interpretation or may reasonably be considered ambiguous.[34] As discussed above, the language of § 83-1,107 is not ambiguous and therefore not open to construction. As such, we decline Heist's invitation to consider the legislative history behind L.B. 191.

### (b) Nebraska Law

Heist also maintains that the district court erred because its interpretation of § 83-1,107 "violates" three of our earlier

---

[32] *State v. Street*, 306 Neb. 380, 945 N.W.2d 450 (2020).

[33] Brief for appellant at 15.

[34] *McGuire, supra* note 23.

decisions, "which all state good time reductions are used to calculate PEDs."[35] However, a closer examination of each of these decisions reveals otherwise.

Heist first directs us to our decision in *Adams v. State*.[36] In *Adams*, a DCS inmate brought a declaratory judgment action against the Board of Parole, seeking a determination that § 83-1,110(1) unconstitutionally usurped the board's authority and a declaration that he was eligible for parole.[37] In discussing § 83-1,110(1), we stated, "The Legislature has declared that '[e]very committed offender shall be eligible for parole when the offender has served one-half the minimum term of his or her sentence . . . ,' as adjusted for good time."[38] Heist argues that this language indicates this court's "clear interpretation that the one-half reduction to the minimum term is for good time."[39] We disagree.

First, the plain language of § 83-1,110 makes it clear that the phrase "one-half the minimum term" refers to the point at which an inmate shall be eligible for parole, not to a reduction in an inmate's minimum sentence. Second, to the extent § 83-1,110 references good time reductions, the plain language of the statute states that such reductions are not applicable to a sentence imposing a mandatory minimum term, as is the case here. Third, and most important, our opinion in *Adams* discussed § 83-1,110(1) under the conditions clause of the Nebraska Constitution. A case is not authority for any point not necessary to be passed on to decide the case or not specifically raised as an issue addressed by the court.[40] In other words, our use of the phrase "*as adjusted for good time*" in *Adams* is dicta and is not to be interpreted as meaning this court has opined

---

[35] Brief for appellant at 16.

[36] *Adams v. State*, 293 Neb. 612, 879 N.W.2d 18 (2016).

[37] *Id*.

[38] *Id*. at 618, 879 N.W.2d at 22.

[39] Brief for appellant at 14.

[40] *Mach v. County of Douglas*, 259 Neb. 787, 612 N.W.2d 237 (2000).

that good time reductions apply to an inmate's minimum sentence or PED.

Heist also argues that the district court erred in its reliance on *Caton v. State*[41] and *State v. Castillas*[42] to conclude that good time reductions are not used to calculate an inmate's PED. We note, however, that the district court only referenced *Castillas* and *Caton* to recite how PEDs and TRDs are calculated in Nebraska. Additionally, though Heist is correct that both cases "deal with calculating mandatory minimums . . . and neither addresses [L.B.] 191 good time,"[43] he fails to appreciate that those cases did not discuss L.B. 191 good time, because the sentences at issue in those cases occurred prior to the enactment of L.B. 191. Therefore, L.B. 191 good time reductions would not have been available to the petitioners in *Castillas* and *Caton*, and as such, it was not necessary for us to discuss such reductions there.

### (c) Impact of § 83-1,107(2)

Heist further argues that the district court erred in finding that § 83-1,107(2) unambiguously provides that L.B. 191 good time applies only to reductions in the maximum term, because this approach results in the "anomalous, unusual, or absurd result" of 62 inmates currently having inverted sentences.[44] In support of his argument, Heist points to our decisions in *Castillas* and *Johnson v. Kenney*.[45] In *Castillas*, we recognized that one of the purposes behind § 83-1,107 was to "ensure that no one would reach mandatory discharge before reaching parole eligibility."[46] Then, in *Johnson*, we explained that it would not serve the legislative intent if a

---

[41] *Caton v. State*, 291 Neb. 939, 869 N.W.2d 911 (2015).

[42] *Castillas, supra* note 31.

[43] Brief for appellant at 15.

[44] *Id.* at 20.

[45] *Johnson v. Kenney*, 265 Neb. 47, 654 N.W.2d 191 (2002).

[46] *Castillas, supra* note 31, 285 Neb. at 189, 826 N.W.2d at 267.

defendant could be mandatorily discharged before being eligible for parole.[47]

[20,21] In construing a statute, it is presumed that the Legislature intended a sensible, rather than an absurd, result.[48] When possible, an appellate court will try to avoid a statutory construction that would lead to an absurd result.[49] Under the absurd results doctrine, a court may deviate from the plain language of the statutory text if application of the plain language would lead to manifest absurdity.[50] In that situation, a court may correct an error in a provision if failing to do so would result in a disposition that no reasonable person could approve.[51] However, the bar of manifest absurdity is not easily cleared, and we have refused to apply the doctrine if the result dictated by the plain language is not "'so absurd that the Legislature could not possibly have intended it.'"[52] Additionally, the absurdity must be able to be corrected by changing or supplying a particular word or phrase whose inclusion or omission was obviously a technical or ministerial error.[53] The doctrine does not justify judicial revision of a statute simply to make the statute more reasonable in the judges' view.[54]

Though the current version of § 83-1,107(2)(c) makes clear that good time is deducted only from the maximum sentence, earlier versions of the statute had no such language. In fact, prior to 1995, the statute specifically directed that good time

---

[47] *Johnson, supra* note 45.

[48] *State v. Gales*, 269 Neb. 443, 694 N.W.2d 124 (2005).

[49] *Thomas v. Peterson*, 307 Neb. 89, 948 N.W.2d 698 (2020).

[50] *Parks v. Hy-Vee*, 307 Neb. 927, 951 N.W.2d 504 (2020).

[51] Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 234-39 (2012), citing *Cernauskas v. Fletcher*, 211 Ark. 678, 201 S.W.2d 999 (1947).

[52] *Parks, supra* note 50, 307 Neb. at 945, 951 N.W.2d at 518.

[53] Scalia & Garner, *supra* note 51.

[54] *Id*.

was to be deducted from the minimum term to determine the date an inmate was eligible for parole and from the maximum term to determine when discharge from the state became mandatory.[55] However, in 1995, the Legislature passed 1995 Neb. Laws, L.B. 371, which explicitly removed any reference to good time being deducted from an inmate's minimum sentence, as well as any reference to parole. Since 1995, § 83-1,107 has been amended on numerous occasions, but the Legislature has never again referred to good time being applied to reduce an inmate's minimum sentence. Thus, the omission of those phrases from the statute appears intentional and not a technical or ministerial error; and the absurdity Heist complains of cannot be corrected by simply supplying the words "minimum sentence" or "parole eligibility date" into the language of § 83-1,107.

[22] Further, although L.B. 191 has caused some inmates to incur inverted sentences, such result appears to be an unintended consequence of L.B. 191. The absurd results doctrine does not include substantive errors arising from a drafter's failure to appreciate the effect of certain statutory provisions.[56] Thus, conceding that the DCS interpretation of § 83-1,107(2), of which Heist complains, has produced the allegedly absurd result of 62 inmates with inverted sentences, this falls far short of meeting the high bar of manifest absurdity.

We are not the only court to take this view. In *Chung Fook v. White*,[57] the U.S. Supreme Court upheld a provision in the Immigration Act of 1917, which exempted wives and children of naturalized citizens from mandatory detention upon entering the country if they were found to be affected with a contagious disease, but made no such provisions for wives and children of native-born citizens. In so doing, the Court noted the oddness

---

[55] See § 83-1,107. See, also, *Von Bokelman v. Sigler*, 186 Neb. 378, 183 N.W.2d 267 (1971).

[56] See Scalia & Garner, *supra* note 51.

[57] *Chung Fook v. White*, 264 U.S. 443, 44 S. Ct. 361, 68 L. Ed. 781 (1924).

of such disparate treatment, insofar as "it cannot be supposed that Congress intended to accord to a naturalized citizen a right and preference beyond that enjoyed by a native-born citizen."[58] Nonetheless, it found that because the statute plainly refers to only the wives and children of naturalized citizens, it could not read the words "native-born citizen" into the statute without usurping the legislative function.[59] The Court concluded that any remedy lies with Congress, and not the courts, if the statute unjustly discriminates against native-born citizens or is cruel or inhuman in its results.[60]

The U.S. Supreme Court has taken a similar view in other decisions, including one decision where it specifically noted that laws enacted with good intentions, when put to the test, frequently, and to the surprise of the lawmaker, turn out to be mischievous, absurd, or otherwise objectionable.[61] But in such a case, the remedy lies with the lawmaking authority, and not with the courts.[62]

Here, L.B. 191 was enacted to allow inmates an opportunity to earn additional good time credit. However, the application of L.B. 191 has created inverted sentences for some inmates. Nevertheless, because § 83-1,107(2)(c) plainly states that good time is to be applied to reduce an inmate's maximum sentence, we cannot interpolate the words "minimum sentence" or "parole eligibility date" without usurping the legislative function. As such, the district court did not err in failing to find absurdity in the practical effects of L.B. 191.

## VI. CONCLUSION

Policy 104.08 is not a rule or regulation for purposes of the APA, and thus, the district court and this court lack jurisdiction

---

[58] *Id*., 264 U.S. at 445.

[59] *Id*.

[60] *Chung Fook, supra* note 57.

[61] *Crooks v. Harrelson*, 282 U.S. 55, 51 S. Ct. 49, 75 L. Ed. 156 (1930).

[62] *Id.*

over Heist's APA claim. Moreover, the plain, direct, and unambiguous language of § 83-1,107 makes it clear that good time reductions earned under this section apply to an inmate's maximum sentence, not to an inmate's minimum sentence and, thus, not to an inmate's PED. Further, to the extent Heist argues L.B. 191 has produced an unintended result, the resolution of such unintended result is within the province of the Legislature, not with this court. Accordingly, Heist's assignments of error are without merit.

AFFIRMED.

FREUDENBERG, J., not participating.